JOHN W. THOMAS *vs.* ROBERT BLEAKIE.

Norfolk.    Nov. 19, 20, 1883. — Feb. 27, 1884.    C. ALLEN & HOLMES, JJ., absent.

If a bond, given for the faithful performance by the principal of his duties as an officer, is entrusted by the surety, after signing it, on the day of its date, which is several days before the expiration of a term which the principal is then serving, to the principal, who delivers it to the obligee on the day when a new term of the office, to which the principal has been reappointed, begins, the recitals of the bond being equally applicable to either term, in an action against the surety for a breach of the bond occurring during the second term, it cannot be ruled, as matter of law, that the bond took effect so as to bind the surety from the date of its delivery by the principal to the obligee.

CONTRACT against a surety upon a joint and several bond, dated January 1, 1872, and containing the following condition:

"The condition of this obligation is such, that whereas the said John W. Thomas, who is sheriff for said county of Norfolk, hath made, constituted, and appointed the above-named Henry A. Darling a deputy sheriff under him, the said John W. Thomas, sheriff, as aforesaid: Now if the above named Henry A. Darling shall well, punctually, and faithfully discharge and perform all the services and duties incumbent on him as a deputy sheriff, as aforesaid, and shall save said John W. Thomas, his

heirs, executors, and administrators, and each and every of them, harmless and fully indemnified from all judgments, damages, costs, trouble, labor, expenses, and disbursements of every kind, which may at any time arise, happen, or accrue to him, them, or either of them, or which he, they, or either of them may make, sustain, or be subjected to, in any manner, by means or in consequence of the appointment of the said Henry A. Darling, by the said John W. Thomas, to the office of deputy sheriff, aforesaid, then this obligation is to be void and of no effect; otherwise, to be and remain in full force, power, and virtue."

Trial in the Superior Court, before *Gardner*, J., who reported the case for the determination of this court, so much of the report as is material to the point decided being, in substance, as follows:

In 1868, the plaintiff was duly elected sheriff of the county of Norfolk for the term of three years from the first Wednesday of January, 1869; and was duly qualified to serve as such. On March 1, 1871, he appointed Henry A. Darling a deputy sheriff, to hold for a term not exceeding three years from the first Wednesday in January, 1869. Darling duly qualified as such deputy soon after his appointment, but did not give a bond to the plaintiff until November 13, 1871.

In 1871, the plaintiff was again elected sheriff for said county for the term of three years from the first Wednesday in January, 1872, and qualified by taking the oath of office on Wednesday, January 3, 1872, and on the next day gave to the treasurer of the Commonwealth a bond as sheriff, dated that day. On the same day, the plaintiff appointed Darling as a deputy sheriff for a term not exceeding three years from the first Wednesday of January, 1872.

The plaintiff put in, subject to the defendant's exception, evidence tending to show that he sent to Darling his written appointment for the coming term a few days before January 4, 1872, with a blank form for a bond; that the bond in suit was delivered to him by Darling on January 4, 1872; and that a breach of the bond occurred during Darling's second term of office.

The defendant's evidence tended to show that he signed the bond in suit on January 1, 1872, and handed it to Darling, and did not afterwards exercise any control over it; that, at this

time, he had no information from any one that Darling was to be reappointed, and that he did not know of such reappointment until 1875 or 1876; that in the latter part of 1871 one of the sureties on the bond of November 13, 1871, was financially embarrassed and of bad credit.

Darling testified that, at some time between the date of the first bond and the date of the second, the plaintiff told him that he was not satisfied with the first bond, and that the witness promised to get another; and that the bond in suit was procured and delivered in pursuance of that promise. The plaintiff denied any such conversation.

The judge ruled that the bond in suit took effect, so as to bind the principal and sureties, from the time when it was delivered to the plaintiff, and was accepted by him, and not from the date of the bond; and that the recital in the condition of the bond, "who is sheriff for said county," was to be determined by reference to the time when the bond took effect, and not to the date of the bond.

The jury found specially that the defendant signed the bond after January 1, 1872; and that Darling delivered the bond to the plaintiff on January 4, 1872. The judge, on motion of the defendant, set aside the first special finding; and ordered a general verdict for the plaintiff.

If the rulings were correct, judgment was to be entered on the verdict for a sum agreed upon; otherwise, the verdict to be set aside.

*C. L. Woodbury*, for the defendant.

*F. D. Ely & C. A. Mackintosh*, for the plaintiff.

DEVENS, J. The special finding that the defendant signed the bond after January 1, 1872, having been set aside, it must be deemed that he signed the bond on that date, and further, in accordance with the second special finding, that it was not delivered by manual transfer to the plaintiff by the principal until January 4, 1872.

It is, as a general principle, true that a bond or other instrument takes effect from its delivery, and not from the date written therein; and that, where it becomes important, the date of the delivery may be shown, whether that be at a time before or after the written date, or whether the written date has been

omitted. *Clayton's case*, 5 Rep. 1. *Oshey* v. *Hicks*, Cro. Jac. 263. *Steele* v. *Mart*, 4 B. & C. 272.

The recitals in the bond of an existing state of things, then, have reference to the state of things existing at the time when the bond becomes operative by delivery. Bonds intended to indemnify the obligee from any default by the principal in the performance of the duties of any public or private trust or office, or in the doing or abstaining from doing any other acts, are of necessity often prepared in advance, and their recitals, as well as their obligations, must therefore relate to the time when they become effectual. *Wells* v. *Child*, 12 Allen, 330. *Dresel* v. *Jordan*, 104 Mass. 407. *Shaughnessey* v. *Lewis*, 130 Mass. 355.

When the bond is left by the surety to be delivered by the principal obligor, he is made the agent for that purpose, and if he delivers it under such circumstances as render his delivery unauthorized, the surety is still liable, unless the obligee had notice of such facts, either from the instrument or in some other way, which fairly put him on inquiry as to whether such delivery was authorized. *Dair* v. *United States*, 16 Wall. 1. Thus, if it was agreed between the principal and surety that the bond should not be delivered until some other person named had also signed as surety, and the principal, disregarding the agreement, and without notice thereof to the obligee, delivered it, the surety would be bound. But if it appeared from the bond, by the names recited as co-sureties, that those contemplated as such had failed to sign, it would be otherwise, as the obligee would then be warned that it was delivered before the agreement into which the surety intended to enter had been completed.

If it were true that the principal obligor in the bond in suit was not a deputy of the sheriff when the defendant's signature was written, but only expecting an appointment from him, and providing himself for its acceptance by preparing to furnish the security usually required to indemnify that officer, the case at bar would present few difficulties. Having, after his signature, entrusted the bond to the principal, the surety must, under such circumstances, be held to have consented that his liability thereunder should arise when the facts recited *in presenti* should thereafter occur. It would be legally inferrible that the principal was then to deliver it, and that it was then to

become operative for the term of the appointment at that time made.

The difficulty arises from the fact that the bond in suit describes a term of office held by Darling, the principal, on the day when it was signed by the surety and of its written date, three days of which were unexpired ; and, if the day of its delivery be taken as the date when it became operative, and its recitals are referred thereto, it describes with equal clearness a subsequent term held by him which commenced on January 4, 1872.

The position of the defendant, that his signature and the delivery of the bond by him to Darling on January 1 caused it to take effect as of that date, whenever it was transferred to the plaintiff, is certainly not tenable. While the principal held the legal custody and control of it, there was no liability on the part of the defendant. That commenced only upon the transfer of it to the obligee. *Fay* v. *Richardson*, 7 Pick. 91. *Freeman's National Bank* v. *Savery*, 127 Mass. 78. It was never in force unless it was so during the term which commenced on January 4, and it was in that term that the breach of the bond occurred. It was not delivered to the obligee until the preceding term had expired, and could have had in relation to that no operative effect, as it contained no retrospective provisions.

Even if this be conceded, the defendant further contends that the delivery or manual transfer of the bond cannot operate to substitute another official term for that which, as shown by the written date, the condition of the bond identifies as its subject ; that this written date gave notice to the plaintiff when it was delivered to him of the extent of the liability which the defendant had assumed ; and therefore, if the liability as thus described was not what he sought to be indemnified against, he has no just ground of complaint.

Even if facts which, at the time of the written date, do not exist, and which are recited *in presenti*, are to be treated as recited of the date of the subsequent delivery of the bond, if they have then an existence, it is still a different question whether, if the facts so recited exist both at the time of the written date and of delivery, although as thus recited they apply to different subject matters, (in the case at bar, the two appointments of the

deputy sheriff,) they are then to be treated as applicable solely to the later date. That this would be so, so far as those actually delivering the bond are concerned, whether principals or sureties, we do not doubt; for, by delivery, they would have adopted that as the date of the transaction to which the recitals referred. The words *in presenti* being properly construed in regard to them as of the then existing state of affairs, the description of the second official term would be accurate in the bond here in suit, while the preceding term might be held not to be described.

When a surety has had no part in the actual delivery of the bond, but has left it in the hands of the principal obligor, it may be held that he consents to become bound by it when the principal shall deliver it, if the facts to which it applies exist at the time of his signature to it, or, if not then existing, if they shall thereafter come into existence. But when the facts actually exist at the date of the surety's signature to the bond as described therein, and a new state of facts subsequently comes into existence, which would also be accurately described if referred to the date of delivery, it cannot be inferred, as matter of law, that, by leaving the bond in the hands of the principal, he has consented that it may then be delivered and thus applied to the subsequently existing state of facts. This would certainly extend his liability further than it has been extended in any case which we have found, or to which we have been referred. In such a contingency some additional evidence should be required to show the consent of the surety to the application of the bond to the new state of facts or circumstances which, from the character of the bond signed or in some other way, would indicate that he did not intend it to apply to the facts as they existed at the date of his signature. Nor by this rule is any injustice done the obligee, who, by the written date, is informed of the application which the bond may have to facts as they are then existing, and is fairly put upon his inquiry whether the surety consented or intended it should apply under a new state of facts.

We are therefore brought to the conclusion, that the learned judge who presided erred in ruling, as matter of law, that the bond took effect so as to bind the sureties thereto from the date of its delivery by the principal to the plaintiff, and his acceptance

thereof, and that they were liable for any breach of its condi-tions occurring during the principal's term of office which com-menced on January 4, 1872.

The plaintiff relies strongly on the case of *United States* v. *Le Baron*, 19 How. 73, and 4 Wall. 642, which he considers fully to sustain his position. It rather affords an illustration of the view we have taken. Beers, the principal, was a deputy postmaster at Mobile under an appointment by the President made during the recess of Congress, and had received a commission bearing date in April, 1849, to continue in force until the end of the next session of the Senate. He had qualified under it by giving bond, and was exercising the duties of the office. In April, 1850, he was nominated to the Senate by the President as deputy postmaster at Mobile, was confirmed, and his commission was signed by the President, of which he was notified on April 22, 1850. This commission was not transmitted to him, as this is not done until after acceptance of his bond; but on July 1, 1850, a second bond was prepared, reciting, " whereas Oliver S. Beers is deputy postmaster at Mobile," which was transmitted to the Postmaster General and accepted by him on July 15. The default assigned as a breach of the bond occurred under the second appointment. No default was permitted to be shown, as against sureties in the second bond, which occurred between July 1 and 15.

It was held that the recitals of the bond were to be treated as of the date of the acceptance by the Postmaster General; that a ruling that the holding of the office to which the bond referred was the deputy postmaster's first appointment was erroneous; that the law settled the date of the appointment referred to to be the time when the bond took effect, and this was also settled by the acceptance, as thereby the principal became completely in-vested with the office. But it will be observed that the officer could not by law act as such until after the acceptance of his bond by the Postmaster General. It was thus shown that the bond was to take effect, not on the day of its date, or even upon its deliv-ery, but *in futuro*, and upon an act to be done by the Postmaster General. It therefore appeared that, although a state of facts existed at the time of the signature, (to wit, that Beers was then postmaster at Mobile,) as recited therein, it could not have been

the intention of the surety to apply the bond thereto, but to those facts which would subsequently exist, when by its acceptance the bond should become operative.

According to the terms of the report, the verdict is to be set aside, and there should be a                         *New trial.*