# Cases

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### July, 1903.

---

In the Matter of the Guardianship of MABEL FARDETTE, an Infant, Respondent, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE, MARYLAND, Appellant.

*A surety company's liability on a guardian's bond for money of the infant left in the guardian's possession at the time of his appointment.*

Prior to January 1, 1902, a firm of attorneys, composed of William F. Hodge and Robert H. Slocum, recovered, on behalf of an infant client, a judgment for $5,502.76, which amount they deposited on January 2, 1902, in the name of Hodge & Slocum. On the same day Slocum drew from the bank the sum of $3,347.61 which he claimed was due to his firm for services rendered in the action, leaving in the bank a balance of $2,311.04 which concededly belonged to the infant client.

January seventh Slocum prepared a petition for his appointment as general guardian of the infant, which petition recited that the infant was possessed of $2,311.04, which was in the hands of Hodge & Slocum. January ninth the petition, and a bond for twice the sum mentioned in the petition, were filed with the surrogate, and letters of guardianship were issued to Slocum. The day prior to the issuing of the letters of guardianship Slocum withdrew from the bank by check $1,390 of the infant's funds, but it did not appear that he did not have on hand, at the time the letters of guardianship were issued, the entire sum of $2,311.04 belonging to the infant. Slocum subsequently absconded with almost all of the infant's funds.

*Held,* that, under section 2596 of the Code of Civil Procedure, providing, " A person to whom letters are issued is liable for money or other personal property of the estate which was in his hands or under his control when his letters were issued, in whatever capacity it was received by him or came under his control," the surety was liable for the moneys withdrawn by Slocum from the bank on the day before the letters of guardianship were issued.

APPEAL by the United States Fidelity and Guaranty Company of Baltimore, Maryland, surety upon the official bond of Robert H. Slocum as general guardian of Mabel Fardette, an infant, from a decree of the Surrogate's Court of Onondaga county, bearing date the 16th day of January, 1903, and entered in said Surrogate's Court, upon a final accounting of the proceedings of said general guardian, in and by which it was adjudged that said Slocum had in his hands, unexpended and unadministered, of money received by him as such general guardian, the sum of $1,970.42, and that said sum be paid by him to Frank Fardette, his successor as general guardian of said infant.

*Thomas Hogan*, for the appellant.

*Ray B. Smith*, for the respondent.

McLENNAN, J. :

On the 9th day of January, 1902, Robert H. Slocum was duly appointed general guardian of the infant Mabel Fardette by decree of the Surrogate's Court of Onondaga county. On that day he filed his official bond as such guardian in the penal sum of $4,622.08, executed by himself as principal and the appellant as surety. Also, his consent to act as such guardian and his oath of office. Thereupon letters of guardianship were duly issued to him, and he continued to act as such guardian until October 20, 1902. On said last-mentioned day said letters were revoked upon the ground that Slocum had absconded from the State, and that his whereabouts could not be ascertained. In the decree so revoking his guardianship it was ordered that he make and file his account as general guardian of Mabel Fardette, and one Frank Fardette was appointed general guardian of said infant in his place. Slocum failed to make and file his account as directed; the appellant, the surety on his bond, appeared ; several hearings were had, and proofs were taken tending to establish the amount of money and property of said infant received by Slocum as general guardian, for which he was liable. Upon the conclusion of such hearings the decree was entered which is appealed from.

It appears that prior to January 1, 1902, the infant, by her guardian *ad litem*, recovered a judgment against the New York

Central and Hudson River Railroad Company for damages on account of personal injuries received by her in the sum of $10,000. The firm of Hodge & Slocum, composed of William F. Hodge and Robert H. Slocum, were the attorneys for the plaintiff in that action, and it appears that Slocum had entire charge of the conduct of the case. Upon appeal the judgment was reduced to $5,000, and on the 1st day of January, 1902, that sum was paid to Slocum, together with the costs, amounting in the aggregate to $5,502.76, and that amount was deposited in the Commercial Bank of Syracuse on January 2, 1902, in the name of Hodge & Slocum. On the same day Slocum drew out of the bank by check the sum of $3,347.61, which he claimed was the amount which was due and owing to his firm of said judgment, for their services rendered in said action. That was the entire sum claimed by said firm for their services, leaving in the bank a balance which with interest amounted to $2,311.04, and which concededly belonged to their infant client. Four days after and on the 6th day of January, 1902, the infant was notified of the payment of the judgment, and Slocum urged her to permit him to be appointed her general guardian, which she consented to do. On the following day, January seventh, Slocum prepared her petition for his appointment as general guardian. The petition recited that she, the infant, was possessed of said sum of $2,311.04, in the hands of Hodge & Slocum, which represented the balance due the petitioner of the proceeds of the judgment recovered by her against the New York Central and Hudson River Railroad Company, which had been paid to Hodge & Slocum. On the following day, January 8, 1902, the official bond of Slocum, as general guardian, was executed in the penal sum of $4,622.08, being exactly twice the sum mentioned in the petition, and the appellant, the United States Fidelity and Guaranty Company, became his surety, and on the following day, January ninth, the petition and bond were filed with the surrogate, and letters of guardianship were issued to Slocum.

It appears that on the 7th day of January, 1902, just two days before the letters of guardianship was issued, the infant asked Slocum for some money, and he advanced to her $15, stating, however, that he did so personally, he not yet having been appointed her guardian. On the following day, January eighth, she obtained a

check for $75, and on the following day she received a check for $315. It also appears that on that day she signed a receipt for $750, but testified that she received no money represented by such receipt; that she did not know she had signed the same, and the evidence tends to show that her signature was procured to the same by means of fraud. In April, 1902, the infant received a check from Slocum for $50, making a total of $455, the amount received by her from him.

On the 9th day of January, 1902, after Slocum had been appointed general guardian, he stated to the infant in the presence of witnesses that he had $2,311.04 of her money in his hands, and, deducting the $455 which had been paid by Slocum to the infant, there remained in his hands $1,856.04, which with the interest added makes the amount directed to be paid by the surrogate in the decree appealed from.

From the statement made thus far there would seem to be no possible question about the correctness of the surrogate's decree which is appealed from. It is claimed by the appellant, however, that the amount ordered paid by Slocum in the decree should first be reduced by $750, because of an agreement alleged to have been made by one Fohs, with whom the infant was living before the action against the railroad was brought, and Slocum, by which Fohs was to have a certain amount of the recovery, but it appears that the infant never knew anything about such agreement; that no money was advanced to her by Fohs, and that she never gave any order upon Slocum for the payment of the money to Fohs. There was no agreement between the infant or her guardian *ad litem* as to the compensation of Hodge & Slocum, and it appears that of the amount paid by the railroad company that firm took over $3,000, apparently without right; certainly without any agreement to justify the taking of such amount of compensation.

It is claimed that pursuant to the agreement between Fohs and Slocum, Slocum paid to Fohs $515, but we think there was no evidence which would justify the surrogate in deducting from the guardian's account such sum. The money was not expended by the guardian on account of or for the benefit of the infant, and if expended at all, was in payment of the guardian's personal obligation.

It is also urged by the appellant that the following sums, to wit, $1,000, $390 and $75, should be deducted from the guardian's account as against the appellant, because those sums were drawn out of the bank by check on the day previous to the issuing of the letters of guardianship. In other words, it is contended that these sums were converted by the guardian Slocum to his own use on the day before the appellant became obligated upon his bond. The payment of $75, which was concededly paid to the infant, is allowed in the account. The other two items are disallowed, and it seems to us correctly, because there is no proof showing or tending to show that the moneys represented by such checks had been converted by the guardian prior to the execution of the bond by the appellant. It is entirely immaterial whether the money belonging to the infant was in the bank to the credit of Hodge & Slocum, her attorneys, or whether it was in the pocket of Slocum, who afterwards became her general guardian. The petition upon which the order was made and which was the basis of the proceeding leading to the execution of the bond in question, recited that the guardian Slocum had such amount of money which belonged to and was the property of the infant. It cannot be presumed — there is certainly no proof to establish the fact — that Slocum converted the money to his own use prior to the time when the bond of the appellant was executed; but if such misappropriation took place on the day immediately following his appointment as general guardian, it is clear that it was made in contemplation of such appointment, and, therefore, is covered by section 2596 of the Code of Civil Procedure, which provides: "A person to whom letters are issued is liable for money or other personal property of the estate which was in his hands or under his control when his letters were issued, in whatever capacity it was received by him or came under his control."

The case of *Matter of Noll* (10 App. Div. 356; affd., 154 N. Y. 765) is decisive of this question. In that case the court said: "But where the obligation as administrator to pay, and the right and duty to receive as guardian, are united in the same person, as in the present case, he becomes charged in the latter capacity. This was the situation that arose when the surrogate's decree was perfected. And it is no objection available to the sureties on his official bond as guardian for them to allege that prior to that time or to the

time of his appointment as guardian, he had misappropriated and converted to his own use the fund which came to him as administrator, and to which his wards were entitled. As he had received such fund and had not disposed of it in the administration of the estate, he, in legal contemplation, had it in his custody at the time the decree was made. And for the purpose of the effectiveness of the obligation assumed by the sureties in his official bond as guardian, his liability to account for it conclusively charges him with having the requisite fund."

As we have seen in the case at bar, there is not a scintilla of evidence to indicate that Slocum did not have, on the day when he was appointed general guardian of the infant and when the bond in question was executed, $2,311.04 of the infant's money. There is no proof tending to show that prior to that time he converted a dollar of it, and in fact the petition, as we have seen, asserted that that was the amount in his hands. Upon the accounting he was given credit for every dollar he had paid to or for the benefit of the infant. The balance which remained in his hands was the amount found by the surrogate, and we think that for the payment of such amount to the infant the appellant is clearly liable upon its bond.

The decree of the Surrogate's Court should be affirmed, with costs to be paid by the appellant.

All concurred.

Decree of Surrogate's Court affirmed, with costs.