(81 Misc. Rep. 493.)

### THAYER v. ERIE COUNTY SAVINGS BANK.

(Supreme Court, Equity Term, Erie County. July, 1913.)

1. INSANE PERSONS (§ 42*)—COMMITTEE—ACCOUNTING.

One appointed committee of an incompetent is required to account for money of the incompetent which as such committee she withdraws from the bank, though withdrawing it before qualifying by giving the required bond.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 64–67; Dec. Dig. § 42.*]

2. INSANE PERSONS (§ 45*)—COMMITTEE—BONDS—LIABILITY OF SURETIES.

The bond of the committee of an incompetent, given in compliance with the order appointing her, and conditioned that she shall in all things faithfully discharge her trust and account for all moneys "received" by her, renders the sureties liable for money previously received by her, for which she was legally liable and accountable.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

3. BANKS AND BANKING (§ 133*)—UNAUTHORIZED PAYMENT—LIABILITY.

The right of possession of a committee of an incompetent of money of the incompetent, which the committee as such withdrew from a bank before qualifying by giving the required bond, being perfected by her subsequently giving such bond, rendering the sureties thereon liable for such money, the bank is not liable because of its premature payment, though before the bond is given the committee has been defrauded of the money by a third person.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 339–352; Dec. Dig. § 133.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Wallace Thayer, committee of William Glynn, an incompetent, against the Erie County Savings Bank. Complaint dismissed.

Frederick Haller, of Buffalo, for plaintiff.

William L. Marcy and S. Fay Carr, both of Buffalo, for defendant.

WHEELER, J. This action is submitted for decision by the court upon the pleadings and upon stipulated facts. The action is brought to recover the amount of a deposit standing in the name of William Glynn in the defendant's bank, claimed to have been illegally withdrawn and paid over by said bank to Sarah M. Faller by said bank.

The said William Glynn became insane and was judicially declared incompetent to manage his affairs by proceedings taken in the Erie County Court. By an order of said court the said Sarah M. Faller was appointed committee of the person and estate of the said incompetent person by an order bearing date the 26th day of July, 1904, which order was in the words and figures following:

"Ordered that Sarah M. Faller be, and is hereby appointed, a committee of the person and of the property of the said William Glynn upon executing and filing a bond for eight thousand and five hundred dollars, to be approved by this court, pursuant to the provisions of the statutes in such case made and provided."

Thereafter, and before the commencement of this action, and on the 6th day of June, 1911, the plaintiff was duly appointed the successor of the said Sarah M. Faller, as committee of the person and estate of said incompetent.

The remaining essential facts in the case are covered by the stipulation of the parties to the action, and are as follows, to wit:

The plaintiff admits that on the 26th day of July, 1904, and after the making of said order by the County Court of Erie county, the said Sarah M. Faller caused to be presented to the defendant a written order in words and figures following:

"Erie County Savings Bank.

"$3,126.67.

"Buffalo, N. Y., July 26, 1904.

"Pay cash or bearer three thousand and one hundred and twenty-six dollars, and charge to account of Book No. 132646.

"Sarah M. Faller, as Committee of the Person and Property of William Glynn, an Incompetent Person."

—and the bank book of the incompetent, issued by defendant, and that the defendant thereupon, and relying upon the said writing and order, paid to the said Sarah M. Faller the sum of $3,126.67.

The plaintiff also admits that of the said money so paid by the defendant to the said Sarah M. Faller, the sum of $1,126.76 was actually applied upon and for the benefit of the said William Glynn, the incompetent.

The plaintiff herein also admits that after the payment of said money by the defendant to the said Sarah M. Faller, and on the 22d day of January, 1907, the said Sarah M. Faller duly filed in the office of the clerk of the county of Erie a bond pursuant to the said order appointing said Sarah M. Faller a committee, and pursuant to the

statute, upon which said bond one Edith M. Anthony and Jessie A. Smythe were sureties; that said bond and the sufficiency of said sureties was duly approved by the said County Court of the County of Erie on the said 22d day of January, 1907, and was duly filed as aforesaid, and that the condition of said bond was as follows:

"If the said Sarah M. Faller shall and do in all things faithfully discharge the trust reposed in her as the committee of the person and estate of William Glynn, an incompetent person, of which she has been duly appointed, and shall obey all lawful directions of the said court or a judge thereof, or of any other court or judge, touching the said trust, and shall in all respects render a just and true account of all moneys and other properties received by her, and of the application thereof, and of her said committeeship, whenever she is required so to do by a court of competent jurisdiction, then the preceding obligation to be void, otherwise to remain in full force and virtue."

The plaintiff also admits that on or about the 1st day of May, 1911, said Sarah M. Faller, as committee of said person and property of said William Glynn, presented a petition for the judicial settlement of her accounts as such committee, to the County Court of Erie County, and prayed for her discharge as such committee, and that thereafter and on or about the 14th day of June, 1911, an order was granted by the said County Court of the County of Erie, accepting the resignation of the said Sarah M. Faller as such committee, and referring her accounts to John H. Madden, Esq., as referee to take and state the accounts of said Sarah M. Faller as such committee; and the plaintiff further concedes that in said proceeding said referee found and reported as follows:

"From the evidence submitted before me, it appears that Sarah M. Faller, the former committee, was appointed such committee by an order of this court made and entered in the Erie county clerk's office on or about the 26th day of July, 1904, and that said order provided that said Sarah M. Faller be appointed committee upon her executing and filing a bond to be approved by this court. It further appears that no such bond was ever given by said Sarah M. Faller until the 17th day of January, 1907, when the present bondswomen executed such bond. It appears that until the 17th day of January, 1907, the said Sarah M. Faller did not qualify or become committee. It appears that on the 26th day of July, 1904, immediately upon obtaining and filing the order appointing her, her former attorney, Philip V. Fennelly, induced the said Sarah M. Faller to sign her name as committee to a check on the Erie County Savings Bank for the sum of $3,126.67, and to draw from the bank on that check out of the funds deposited in the bank in the name of William Glynn, the incompetent, the said sum of $3,126.67, and that of said sum the said Philip V. Fennelly forced the said Sarah M. Faller to deliver to him the sum of $2,000, to be held by him in trust as pretended security for a bond which he was to procure for the said Sarah M. Faller; that thereupon the said Philip V. Fennelly misappropriated the sum of $2,000, and has never accounted for any part of it; that at the same time the said Philip V. Fennelly delivered to Sarah M. Faller the residue of the proceeds of the said check, $1,126.67; she has since used the $1,126.67 for the benefit of the incompetent.

"On the 17th day of January, 1907, the bond of the appearing bondswomen was duly executed, approved by the judge of this court, and filed in the Erie county clerk's office and Sarah M. Faller thereupon became the committee of the incompetent. At that time, January 27, 1907, as appears by her account, she turned over to herself as such committee, from herself as an individual, and had in her possession as the funds of the incompetent, $1,434.03."

Said sum of $1,434.03, however, includes other moneys that came into the hands of the said Sarah M. Faller over and above and besides the $1,126.67 of the money drawn by the said Sarah M. Faller from the defendant, and of which the said incompetent received the benefit.

This plaintiff further concedes that thereafter and on or about the 3d day of July, 1911, an order was made by the said County Court of Erie County confirming the said report of said referee. This plaintiff also concedes that the defendant herein never received any notice of said proceeding for judicial settlement of the accounts of Sarah M. Faller as committee of the person and property of the said William Glynn.

This plaintiff also concedes that said Edith M. Anthony is solvent and able to pay the full amount of the claim herein made against the defendant, and that no action has ever been brought or judgment obtained by the plaintiff against said Edith M. Anthony and Jessie A. Smythe, or either of them, or against the said Sarah M. Faller for the recovery of the sum herein sought to be recovered from the defendant by the plaintiff, or any part thereof.

The parties herein concede and stipulate that the interest on $2,000 from the 1st day of July, 1904, to the 26th day of April, 1913, has been properly computed and amounts to the sum of $807.

The question presented is the right of the plaintiff to recover upon the facts stated; the defendant admitting that, at the time the moneys on deposit to the credit of the incompetent were paid to Sarah M. Faller, she had not qualified as committee and had no legal right to receive the same, but contending that when the committee did give the required bond of January 22, 1907, the sureties on the undertaking became liable for the moneys paid, and the bond related back as of the date of the order of appointment, and relieved the bank from further liability for premature payment of the money.

The plaintiff contends that the sureties did not become liable for the moneys so improperly withdrawn, and, if they are liable, that fact does not relieve the defendant from liability for such payment.

The inquiry of the court is therefore directed sharply to the questions: First, whether the undertaking given did or did not make Mrs. Faller's sureties liable for these funds; and, second, if the sureties are liable, whether it relieved the bank from further responsibility. We will take up the consideration of these questions in the order presented.

We are of the opinion that the sureties on the undertaking of January 22, 1907, did become liable for the moneys received from the bank.

[1, 2] There can be no question in our mind that the committee became chargeable, and was required in law to account for, all these moneys received by her, even though withdrawn prior to her qualifying by giving the required bond. She drew it from the bank as committee of the incompetent. It did not belong to her individually. It was impressed with a trust to hold for the benefit of the estate for which she assumed to act, and in an accounting Mrs. Faller could not be heard to say that she did not become responsible for the money

simply because she obtained it before she had the legal right to reduce the fund to her possession and control.  Not only is this true, but it is also true that the sureties on her official bond also became liable for the property so received by their principal.

The undertaking did not relate simply to the future.  It was given in compliance with the order of appointment, and was conditioned that the committee should "in all things faithfully discharge the trust reposed in her as the committee of the person and estate of William Glynn, an incompetent person, of which she has been duly appointed, and shall obey all lawful directions of the said court or a judge thereof touching the said trust, and shall in all respects render a just and true account of all moneys and other properties received by her, and of the application thereof," etc.

The very wording of the condition of the bond shows it was the clear purpose and intent of the instrument to make the sureties liable for all moneys received by their principal, whether received after or before the giving of the undertaking.  The past tense is used.  It covers moneys and property "received" without regard as to when or how received.  It is not confined to such property as "shall be received," but covers property actually "received."  Not only this, but it was the clear purpose and intent of the order that the undertaking should cover all such moneys.  If, at the time the undertaking was given, it, by its terms, had excluded all such moneys and property, and been conditioned simply for only such as should come to the committee's hands in the future, is there any question that such an undertaking would not have received the approval of the judge whose duty it was to approve the bond as to form and sufficiency of the sureties?  We think not.  The whole tenor of the bond is to make the sureties liable for all moneys received by the committee, and for which she became liable, whether coming to her hands before or subsequent to the giving of the undertaking.  This view of the case is in harmony with the decided cases.

In Gottsberger v. Taylor, 19 N. Y. 150, it was held that the sureties of a special administrator are liable for money belonging to the estate received by him before his appointment and as the agent of a previous administrator to whom he succeeded.  In that case the bond contained no provision that the administrator should obey the orders of the surrogate, and in this respect differed from and is not as strong as in the case at bar.

In Scofield v. Churchill, 72 N. Y. 565, an application was made for the removal of an executor, and resulted in an order of the surrogate that the executor file security or be removed from the executorship.  The bond sued on was executed pursuant to such an order and was prosecuted, and the defense was made that the sureties on that bond did not thereby become liable for the defaults of the executor committed prior to the giving of the undertaking pursuant to the surrogate's order.  The court, however, held the sureties liable in view of the facts and provisions of the statute which contemplated the giving of the bond to cover the situation presented, especially as it was conditioned "not only for the faithful execution of the trust, *but for*

*obedience to all orders* made by the surrogate in relation to the estate."

Whatever may be said in reference to the distinguishing facts in Scofield v. Churchill, the case is certainly an authority to the extent that where the order pursuant to which the undertaking is given contemplates that it shall cover all property and money for which the principal is liable, whether received before or after the giving of such bond, the bond will be given such a construction, if the wording of the undertaking is fairly susceptible of such a construction. That, we think, is what the order appointing the committee in the case at bar contemplated.

The decisions of the courts of other states are quite in harmony with those of New York.

The case of Choate v. Arrington, 116 Mass. 552, holds that, where an executor gives a bond with a surety for the faithful discharge of his duties pursuant to an order for his appointment, "the surety is liable for whatever is properly chargeable to his principal in the official capacity on account of which the bond was given," whether the assets are received before or after the execution of the bond.

In the case of Pinkstaff v. People, etc., 59 Ill. 148, a bond was given conditioned to "do and perform all other acts which may at any time be required of him by law," and it was held that, where the administrator had misapplied the funds of the estate before the bond was given, the sureties became liable for such misappropriation "because the gravamen of the action would be, not the prior misapplication, but the failure to pay over."

In determining the question of the liability of the sureties in the case at bar, due weight must be given to provisions of the condition of the bond that the committee "shall obey all directions of said court or a judge thereof."

The plaintiff in this case cites to the court the case of Thomson v. American Surety Co., 170 N. Y. 109–113, 62 N. E. 1073, and contends that case is an authority for his position that the sureties here are not liable for the moneys received from the bank. We think, however, that the facts in the Thomson Case distinguish it from this. The facts in the Thomson Case are not fully stated in the reported opinion of the court. The record, however, shows that one Benjamin Lord died in 1851, leaving a will, and letters testamentary were issued to one Barstow, who resigned, and one Marshall was appointed in his place, and that by order of the Supreme Court made in February, 1883, Augustus Cruickshank was appointed as Marshall's successor in the trust, and gave a bond with an individual surety. In 1888 an action was brought by beneficiaries under said will against Cruickshank, in which action a judgment was rendered adjudging that said Cruickshank held as the balance of said trust fund the sum of $87,-653.33, which he was directed to pay over and distribute among the beneficiaries under the will. In October, 1893, an order was made requiring Cruickshank to file a new bond, whereupon the bond in suit was given conditioned:

"That if the said Augustus Cruickshank shall faithfully execute the trust reposed in him as such trustee, and shall faithfully pay over, distribute and

divide and account for all the property and money which *shall* come to his hands as such trustee in accordance with the provisions of said will; then the above obligation to be void, otherwise to remain in full force and effect."

Cruickshank subsequently died, without having rendered any account of the $87,653.33 with which he had been charged in the decree of March 6, 1890, and it was sought to charge the surety company, the surety on the second bond, with the balance of the amount established by the decree rendered before the giving of this second undertaking. The Court of Appeals very properly held that:

"According to the tenor of the defendant's bond, it was not responsible for any failure of Cruickshank to discharge the duties of his trust prior to its execution, or to account for moneys which came into his hands before that time."    170 N. Y. page 113, 62 N. E. page 1074.

It will be noted that the condition of the undertaking was that he should account for "all the property and money which shall come to his hands as such trustee."    It was clearly an undertaking for the future, and did not cover, and was not intended to cover, past transactions or defaults.

But that is not this case.    Here the undertaking did not relate simply to the future.    It was given in compliance with the order appointing Sarah M. Faller committee, and was conditioned, not only that she should "in all things faithfully discharge the trust reposed in her as the committee of the person and estate of William Glynn, an incompetent person, of which she has been duly appointed, and shall obey all lawful directions of the said court or a judge thereof touching the said trust, and shall in all respects render a just and true account of all moneys and other properties received by her, and of the application thereof," etc.

Not only the wording of this undertaking, but the circumstances under which it was given, clearly show that it was intended to make the sureties on it liable for all moneys and property received by or coming to the committee, whether such property or money reached her hand prior to the giving of the bond or subsequent thereto.    They undertook to become liable as sureties for all moneys and property however or whenever received, for which their principal became legally liable and accountable.

We therefore are of the opinion that the case of Thomson v. American Surety Co. cannot be deemed as controlling in the disposition of the question involved in this action.

[3] This, then, brings us to the consideration of the remaining question involved in this case, whether, nothwithstanding the giving and approval of the undertaking and the conclusion that the sureties on it became liable for the moneys received from the Erie County Savings Bank, that bank is relieved from the consequences of the unauthorized payment to the committee of the deposit to the credit of the incompetent before such committee had duly qualified in accordance with the provisions of the order for her appointment.    It may be argued that the mere premature withdrawal and payment of these moneys worked no injury to the incompetent's estate.    In other words, that after the required undertaking had once been given the estate was

placed in exactly the same position as it would have been had the money been paid after the giving of the bond. That the money paid to the committee was nevertheless impressed with a trust for the incompetent's benefit, whether she was legally entitled at that time to receive it or not, and she was still bound to account for its proper disposition, and when she gave the required security the estate was placed in exactly the same position as it would have been had the bond been given and approved and filed prior to the receipt of the money.

What was the legal effect of the giving and approval of the official bond of the committee? It not only rendered the sureties on the bond liable for the acts of their principal, but also completed and perfected the right of the committee to the possession of all the property of the incompetent. In this case we learn that, before the right of possession had been perfected by the giving of a bond, the committee in fact received the money from the bank, and her attorney, by a fraud practiced upon her, obtained a portion of this fund. Let us suppose that, instead of the committee having paid over the money to her attorney before the giving of the bond, she had retained possession until after the bond had been executed and filed, and then had been induced by the fraudulent acts of her attorney to pay it over to him. Could it fairly be claimed that, although the bank had prematurely paid the money on deposit, the bank should be compelled to pay a second time, because her attorney had taken advantage of her confidence and ignorance, and gotten away with the funds? We think not, because the giving of the undertaking perfected her right of possession, and cured any defect in that respect. In substance, the mere time of payment is not to be deemed controlling. The committee had the right of retention. If this view be correct, does it not also follow that the bank could not be compelled to pay a second time where the money was fraudulently obtained by a third person from the committee prior to the giving of the bond? We are unable to discover any logical distinction between the two situations. The committee took the fund charged with a trust in favor of the incompetent's estate; and, as we have seen, is chargeable with a failure to account for the money. Her sureties also became liable for these very moneys. The defendant had nothing to do with her attorney or his acts. Let us suppose, further, that subsequent to the committee having qualified by the giving of the undertaking and before the appointment of her successor, she had herself brought suit for the money on deposit and prematurely paid her by the bank. Would it not have been a good and sufficient answer to such an action for the bank to have said: "It is true we paid the money to you before you were entitled to receive it, but since then you have qualified, and supplied all the requirements of the law. You took the fund impressed with a trust, and ought not to be heard to say that you have lost or misappropriated the fund." If such an answer would avail in an action brought by the committee to whom the money was paid, is her successor in office in any better position to maintain this action? We think the question suggests the answer, and that in the negative.

Let us suppose again that the bank, upon the discovery that it had prematurely paid over the deposit, had brought an action to recover the deposit on the theory that it had been paid under a mistake of fact. Would it not have been a complete defense to such an action for the defendant to have pleaded and proved that subsequent to such payment she had qualified by the giving of the required bond, and was entitled to retain the moneys paid? If that be true, upon what principle can the bank be held liable to the committee for the double payment of a debt?

As the result of the discussion, we cannot reach any different conclusion than that the subsequent giving of the official bond by the committee operated to supply and cure any want of authority to recover payment of the money withdrawn from the bank, and placed the parties in the same position, so far as their legal rights are concerned, as though the payment had been made after the committee had qualified by giving the required bond.

It remains for us to discuss two cases cited and relied on by the plaintiff, which it is claimed sustain the plaintiff's right to recover.

In Scribner v. Young, 111 App. Div. 814, 97 N. Y. Supp. 866, a committee of an incompetent gave verbal permission to third persons to cut timber on lands of the lunatic. In a suit against those so cutting such timber, it was held they were liable for the value of the timber taken, to the successor of the committee, as the committee had no power to authorize the cutting without the express authority of the court. It appeared that no money or consideration for the timber cut and taken ever reached the hands of the committee. The statement of the case shows the facts, and the questions there involved differ entirely from those presented by the case at bar, for here the committee in fact received the money in question.

In Johnson v. Ayres, 18 App. Div. 495, 46 N. Y. Supp. 132, arising in this department, it was held that the sureties on a committee's bond could not be held liable for moneys received in consideration of the committee executing a deed of real estate of the incompetent, where he had received no direction from the court to do so, and the deed was void; that the title of the lunatic was not divested by such a conveyance, and the sureties were only liable for moneys legally coming to his hands as trustee. The money paid by the purchasers did not legally belong to the cestui que trust, and therefore the sureties never assumed any liability for such moneys.

It is manifest the case here presented is not this case, for here the moneys received were the property of the cestui que trust, and were impressed with a trust for their benefit. We therefore think the two cases cited do not control the decision in this case. The considerations above expressed lead us to the conclusion that the plaintiff is not entitled to recover. The complaint is therefore dismissed.

Let findings be prepared in accordance with the views expressed. So ordered.