(160 App. Div. 300)

### THAYER v. ERIE COUNTY SAVINGS BANK.

(Supreme Court, Appellate Division, Fourth Department. January 14, 1914.)

1. INSANE PERSONS (§ 35*)—AUTHORITY OF COMMITTEE.

Under Code Civ. Proc. § 2337, prohibiting a committee of the property of an incompetent from beginning his duties until security is given as prescribed by the court, a committee of the estate of an incompetent had no authority to take custody of the funds of the estate until she had given the required bond, though the court had made an order for her appointment.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 52, 53; Dec. Dig. § 35.*]

2. BANKS AND BANKING (§ 130*)—DEPOSIT OF TRUST FUNDS—COMMITTEE OF INCOMPETENT.

The part of the fund of an incompetent's estate withdrawn by the committee of the estate without authority before she had executed a bond cannot be recovered from the bank permitting its wrongful withdrawal if it was in fact applied to the incompetent's use.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319-325, 327; Dec. Dig. § 130.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun, 643.

**3. INSANE PERSONS (§ 45*)—COMMITTEE OF ESTATE—LIABILITY.**

The fact that the estate of an insane person could hold the committee of the estate liable individually for money wrongfully withdrawn by the committee without authority and paid over to her attorney and appropriated by him, or that the attorney could be held liable therefor, would not of itself be sufficient to charge her as committee so as to make her sureties liable, where she did not legally become such committee until the subsequent execution of a bond as such.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

**4. BANKS AND BANKING (§ 154*) — LIABILITY OF COMMITTEE — BURDEN OF PROOF.**

In an action by the committee of an incompetent person to recover from a bank the amount of funds of the incompetent deposited in the bank which it permitted plaintiff's predecessor to withdraw before she had qualified as committee by executing a bond, the burden of establishing liability by the former committee for the amount so withdrawn was upon defendant.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 502–512, 515, 516, 518–533; Dec. Dig. § 154.*]

**5. INSANE PERSONS (§ 45*)—BOND OF COMMITTEE—RETROACTIVE OPERATION.**

The bond of a committee of an incompetent, which was conditioned that she "shall and do in all things faithfully discharge the trust reposed in her as committee," and "shall obey all lawful direction," etc., of the court, would not cover property of the estate lost by the committee's previous unauthorized acts before she had qualified as committee by executing bond.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

**6. PRINCIPAL AND SURETY (§ 59*)—CONSTRUCTION OF OBLIGATION.**

The liability of a surety is strictissimi juris and cannot be extended by construction.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. § 59.*]

**7. BONDS (§ 61*)—TIME EFFECTIVE.**

As a rule an official bond takes effect from its delivery.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 47, 63, 71; Dec. Dig. § 61.*]

**8. INSANE PERSONS (§ 65*)—COMMITTEE OF PROPERTY—TITLE.**

The committee of the estate of an incompetent has no title to the property, but is a mere custodian thereof.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 108, 110–114; Dec. Dig. § 65.*]

Appeal from Trial Term, Erie County.

Action by Wallace Thayer, as committee of the person and property of William Glynn, an incompetent person, against the Erie County Savings Bank. From a judgment (81 Misc. Rep. 493, 143 N. Y. Supp. 77) dismissing the complaint, plaintiff appeals. Reversed, and judgment directed for plaintiff as stated.

On July 26, 1904, William Glynn, an incompetent person, had on deposit with defendant savings bank $3,126.67. On that day the County Court of Erie County in a proceeding for that purpose adjudged Glynn to be incompetent and made an order for the appointment of his daughter, Mrs. Sarah M. Faller, committee of his person and estate. The form of the order was that she be appointed "a committee of the person and of the property of said William Glynn, upon executing and filing a bond for $8,500.00, to be approved

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by this court, pursuant to the provisions of the statute in such case made and provided." After the making of this order and on the same day, Mrs. Faller, through her attorney, withdrew from defendant savings bank the whole of Glynn's deposit by means of a check signed by her as committee and the production of a copy of the order appointing her committee and of Glynn's passbook. Mrs. Faller had not then qualified as committee by giving the required bond, nor did she do so until January 22, 1907. The present action was brought by plaintiff, the successor of Mrs. Faller as committee, to recover of defendant the amount of said deposit account on the ground that the payment thereof to Mrs. Faller was unauthorized and of no effect as against Glynn's estate.

On June 14, 1911, said County Court made an order accepting the resignation of Mrs. Faller as committee and appointing a referee to take and state her accounts as such, and on June 23, 1911, plaintiff was duly appointed and qualified as committee in her place, and on July 3, 1911, said County Court confirmed the report of the referee upon Mrs. Faller's accounting. From this report it appeared that Mrs. Faller had used and applied $1,126.67 of the $3,126.67 she drew from defendant's bank to the use and for the benefit of the incompetent; that she was induced by one Fennelly, an attorney at law who had acted as her attorney in the proceeding, to sign her name as committee to the check on defendant's bank and to draw the fund therefrom, and that he (Fennelly) "forced the said Sarah M. Faller to deliver to him the sum of $2,000.00 to be held by him in trust as pretended security for a bond which he was to procure for the said Sarah M. Faller, and that thereupon the said Fennelly misappropriated the sum of $2,000.00 and has never accounted for any part of it." Apparently Fennelly himself presented the check and drew the money and handed over to Mrs. Faller only $1,126.67 thereof, retaining the $2,000.00 in his possession. The referee also held and reported in substance that Mrs. Faller had not become committee until she qualified by giving her official bond in January, 1907, and that she was not chargeable, as committee, with the $2,000.00 received and misappropriated by said Fennelly, but was chargeable with the sum of $1,126.67 which she applied to the use of the incompetent.

Defendant had no notice of the proceedings for Mrs. Faller's resignation and accounting, and took no part therein.

The condition of the bond given by Mrs. Faller as committee on January 22, 1907 is as follows:

"If the said Sarah M. Faller shall and do in all things faithfully discharge the trust reposed in her as the committee of the person and estate of William Glynn, an incompetent person, of which she has been duly appointed, and shall obey all lawful direction of the said court or a judge thereof, or of any other court or judge, touching the said trust, and shall in all respects render a just and true account of all moneys and other properties received by her, and of the application thereof, and of her said committeeship, whenever she is required so to do by a court of competent jurisdiction, then the preceding obligation to be void, otherwise to remain in full force and virtue."

Her sureties upon this bond are solvent and able to pay the whole amount sued for here, but no action has been brought by plaintiff against her or her sureties.

Upon plaintiff's appointment and qualification as committee, he duly demanded from defendant the amount of Glynn's deposit account.

It is admitted that defendant paid the money in reliance upon the order appointing her committee and upon her check or order upon the bank signed by her as such committee.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Frederick Haller, of Buffalo (Wallace Thayer, of Buffalo, of counsel), for plaintiff.

Moot, Sprague, Brownell & Marcy, of Buffalo (S. Fay Carr, of Buffalo, of counsel), for defendant.

FOOTE, J.   [1] Payment by defendant of the money it held on deposit for William Glynn to Mrs. Faller was wrongful and of no effect as against Glynn or his estate.   Although an order of the County Court had been made for her appointment as committee, she had not qualified by giving the required bond, and her appointment was incomplete.   She had no authority to take the custody of any funds or property of the estate.

"A committee of the property cannot enter upon the execution of his duties until security is given as prescribed by the court."   Code of Civ. Pro. § 2337.

Her act in withdrawing the deposit, although in form as committee, was, in legal effect, the act of a stranger, and did not bind the estate.

It was so held as to a testamentary guardian who was required by statute to give a bond before exercising any authority over the estate of a minor for whom he was appointed guardian in Wuesthoff v. Germania Life Ins. Co., 107 N. Y. 580, 14 N. E. 811.   The functions of a guardian and of the committee of an incompetent are substantially the same, and we think this case controlling authority against the right of Mrs. Faller before qualifying as committee to take possession of this fund, or by so doing, to bar or prejudice the right of Glynn's estate to recover the same of defendant.   See, also, Sherman v. Wright, 49 N. Y. 227; Wileman v. Metropolitan St. Ry. Co., 80 App. Div. 53, 80 N. Y. Supp. 233.   Plaintiff is therefore entitled to recover the deposit exactly as if it still remained with defendant, unless defendant has met the case made by plaintiff by showing that Glynn's estate has received the fund or that Mrs. Faller has since become chargeable with it as committee, for, if she has, then the estate must be held to have received it.

[2] As to $1,126.67 of the fund, which she applied to the use of the incompetent and accounted for as committee, it must be held that Glynn's estate has actually received it, and that part of the fund cannot be again recovered.   As to the remaining $2,000 which she permitted her attorney to take into his possession on the day it was withdrawn from the bank, we cannot say on this record either that Glynn's estate has received it or that Mrs. Faller is chargeable as committee with having received it, as the only proof as to its subsequent disposition defendant has given is by the concession in the record:

"That said attorney misappropriated said sum of $2,000.00 and has never accounted for any part of it."

[3] That the estate may hold her liable as an individual, or her attorney, is not alone sufficient to charge her as committee, and thus subject the sureties on her official bond to liability.   Baucus v. Barr, 45 Hun, 582, affirmed 107 N. Y. 624, 13 N. E. 939, on opinion below. She did not become such committee actually and legally until she qualified by giving her bond, which was some 2½ years after she obtained possession of the money and passed it to her attorney.   It does not appear that she had possession or control of this $2,000 at the time she actually became committee or at any time since, or that she could have recovered the same from her attorney at any time either before or since she qualified.

Is she accountable as committee, in case she is liable as an individual? I think not, unless: First, she has, in respect of this $2,000, violated the condition of her bond by failing to "faithfully discharge the trust reposed in her as committee" or to "obey all lawful directions of said court, or a judge thereof, or of any other court or judge touching the said trust," or to "render a just and true account of all moneys and other property received by her and of the application thereof and of her said committeeship whenever required so to do by a court of competent jurisdiction"; or, second, her bond when executed relates back to the date of the order for her appointment and thus becomes effective from that date to validate her acts in taking possession of this fund.

[4] It does not appear, and it is not claimed by defendant, that she has failed to obey the orders of the County Court or any other court in reference to the trust, or to fully and correctly account, nor is there any basis for asserting that she has not "faithfully discharged the trust reposed in her." The burden of establishing her liability for such a cause is with defendant, and defendant failed to show that Mrs. Faller had any means of her own out of which she could have made good the loss of the $2,000 converted by her attorney, or that by due diligence she could have recovered the money from him.

[5] I am aware of no statute or legal principle by which the bond can be given retroactive effect so as to cover prior dealings of the committee with the trust estate. The condition of the bond (which is the only part of it printed in the record) appears to apply only to the future. It certainly does not purport to apply to past transactions. It would, of course, apply to such part of the trust estate as the committee actually had in hand at the time it was given, but not to such as had been lost beyond recovery by her previous unauthorized and unofficial dealings therewith. As to the latter, her sureties had a right to assume that she had not violated the order appointing her and the statute, by acting or attempting to act as committee before qualifying as such, and that they were not assuming liability for funds of the trust estate already lost by her unlawful intermeddling.

[6] The liability of sureties is strictissimi juris and cannot be extended by construction. People v. Pennock, 60 N. Y. 421. The attempt was in that case to hold the sureties upon the official bond of a supervisor liable for funds of the town which came to the hands of the supervisor, but of which he was not by law the proper custodian at the time he received them, and it was said in course of the opinion denying such liability:

"When he (the surety) undertook that his principal should account for and pay over all moneys that should come to his hands as supervisor, the intendment is that such moneys as should, pursuant to law, be received by him in his official capacity and in virtue of his office, were referred to, and not such as he might receive by color of office or because he was supervisor but without right. * * * The principal of the appellant (the surety) was an intruder in respect to the moneys * * * and acted in taking them into his hands, officiously and not officially."

These observations should apply here to the officious intermeddling of Mrs. Faller with the trust estate at a time when the law forbade

her so to do. The statute which she thus violated must, as to the sureties, be read with the bond and their liability limited thereby, as in that case. In Thomson v. American Surety Co., 170 N. Y. 109, 62 N. E. 1073, the surety of a testamentary trustee was held not liable for the funds of the trust estate which were not actually in the hands of the trustee at the time he became surety upon the trustee's official bond, but which had been lost or misappropriated by the trustee while serving as such prior to that time and the trustee's default and liability to the estate had been previously determined by a judgment against him fixing its amount. The condition of the bond in that case was that the trustee "shall faithfully execute the trust reposed in him as such trustee and shall faithfully pay over, distribute and divide and account for all the money and property which shall come to his hands as such trustee." These words were held to show on their face that the obligation of the surety was limited to future transactions and to property which should thereafter come into the hands of the trustee.

In our case, we think the obligation which the surety assumed was as to the conduct of the committee in reference to the trust estate after she became such committee, and had no reference to her prior transactions with the estate as an individual or before she could legally act as committee.

[7] Moreover, it is the general rule that an official bond takes effect from the time of its delivery. Reilly v. Dodge, 42 Hun, 646; Bissell v. Saxton, 66 N. Y. 55; Thomas v. Bleakie, 136 Mass. 568; United States v. Le Baron, 19 How. 73, 15 L. Ed. 525. The learned trial judge considered the cases of Gottsberger v. Taylor, 19 N. Y. 150, and Scofield v. Churchill, 72 N. Y. 565, as controlling authorities in favor of the liability of Mrs. Faller and her sureties.

Gottsberger v. Taylor was an action by the administrators of the estate of one O'Neil upon the bond given by one Smith as special administrator for the collection of the effects of O'Neil's estate against the maker and the sureties. It appeared that one Henry had been the previous special administrator and that defendant Smith, acting as his agent, had collected rents of the O'Neil estate which he had not paid over to Henry. Subsequently Smith was appointed Henry's successor as special administrator. On Henry's accounting before the surrogate, Smith made and delivered to Henry a receipt for the amount of rents which Smith had collected as agent for Henry and which still remained in Smith's hands. The sureties upon Smith's bond disputed their liability for this amount. They were held liable by the courts below and in the Court of Appeals, where Grover, J., writing for the court, said:

"The money collected by Smith as agent for Henry, while the latter was collector of the estate, was received by Smith in a fiduciary character, and it would have been a violation of duty on his part to convert the same to his own use. The presumption then is that this money remained in his hands at the time he gave the receipt to Henry. The character in which Smith held the money was then changed. Before, he held it as agent for Henry; after, in his official character as collector. Then the liability of the sureties attached. The passing of the money from Smith to Henry, and from the latter back to Smith, would have been an idle ceremony. The law has regard to substance and not to form. Were the presumption otherwise, and Smith deemed the debtor of Henry prior to giving the receipt, the sureties of Smith

would be equally liable. The demand against Henry in favor of the estate of O'Neil was a chose in action, and by the terms of the bond Smith was to account for and deliver over things in action which came to his possession."

The presumption that the moneys which Smith had collected still remained in his hands at the time of his appointment and qualification as special administrator which controlled the decision in that case cannot be indulged in in the present case, for here the admitted fact is that at the time Mrs. Faller gave her bond to qualify as committee the $2,-000 was not in her hands, but had been 2½ years before that time handed to her attorney, who had misappropriated it.

In the Scofield Case, the action was brought upon a bond given by an executor pursuant to an order which required such bond to be made as a condition of denying an application for his removal as executor. Among the conditions of the bond is that he would obey all orders of the surrogate made in relation to the estate. An order had been made by the surrogate, which was the basis of the recovery in that action, and it was held that the sureties were liable for the executor's failure to obey that order. In the present case, there has been no order of the County Court requiring Mrs. Faller to account for the $2,000 in the hands of her attorney, and we may conclude from the facts found that the County Court refused to hold her liable for that part of the fund.

[8] The committee of an incompetent is not vested with title to property. She is a mere custodian. Forbell v. Denton, 53 App. Div. 402, 65 N. Y. Supp. 1120.

In this respect the functions of a committee are like those of a guardian of an infant. Administrators of decedent's estates, however, take title, and by express provision of the statute that title relates back to the death of the intestate. Smith v. Robinson, 30 Hun, 269; Priest v. Watkins, 2 Hill, 225, 38 Am. Dec. 584. Hence the cases fixing liability of administrators and their sureties for funds and property of the estate received by or in the possession of the administrator before his bond is given are not applicable. In Matter of Noll, 10 App. Div. 356, 41 N. Y. Supp. 765, affirmed 154 N. Y. 765, 49 N. E. 1101, the sureties of a general guardian of an infant were held liable for certain property of the infant which had come into the possession of the guardian before his appointment as such, and which before his appointment he had misappropriated and converted to his own use; but in that case the guardian had received this property originally as administrator of the estate of the father of the infant, and it was held that the guardian became chargeable in his official capacity and his sureties liable, because of the provisions of section 2596 of the Code, as follows:

"A person to whom letters were issued, is liable for money or other personal property of the estate, which was in his hands or under his control, when his letters were issued; in whatever capacity it was received by him, or came under his control. Where it was received by him, or came under his control, by virtue of letters previously issued to him, in the same or another capacity, an action to recover the money, or damages for failure to deliver the property, may be maintained upon both official bonds; but, as between the sureties upon the official bond given upon the prior letters, and those upon the official bond given upon the subsequent letters, the latter are liable over to the former."

We find nothing in the opinion of Mr. Justice Bradley in that case which indicates that the sureties could have been held liable but for this statute. In Matter of Fardette v. U. S. Fidelity & Guaranty Co., 86 App. Div. 50, 83 N. Y. Supp. 521, the surety of a guardian was held liable for a fund of the infant in the hands of the guardian before his appointment and qualification, but which had become lost by the misappropriation thereof by the guardian, for the reason that it did not appear that the guardian had misappropriated the fund before he qualified as such. The case of Rouse v. Payne, 120 App. Div. 667, 105 N. Y. Supp. 549, which involved a similar question, was disposed of on the ground that an action against the surety could not be maintained until the decree had been made by the Surrogate's Court settling the accounts of the guardian and fixing the amount for which the guardian was to be charged.

Our conclusion is that defendant has not shown facts sufficient to relieve itself from liability to the incompetent's estate for the $2,000 of the fund which that estate has not received and which it does not appear it can recover from the sureties on Mrs. Faller's bond.

The case was submitted to the court below upon an agreed statement of facts; no witnesses having been examined. It is in form a statement that plaintiff admits certain facts, and defendant certain other facts. We assume the intention of the parties to be that defendant offers in evidence the facts which plaintiff admits and asserts those facts to be true, and, vice versa, that plaintiff offers in evidence the facts which defendant admits and asserts them to be true. We assume therefore that both parties agreed to all the facts admitted by each.

We think the judgment appealed from should be reversed, and judgment directed upon the findings already made in favor of the plaintiff against the defendant for $2,000, with $807 interest to and including April 26, 1913, and at the rate of 6 per cent. per annum from and after that date, with costs of the action to the plaintiff, including the costs of this appeal. All concur.