OPINION OF THE COURT
Andrew J. DiPaola, J.
This is a hearing upon an agreed statement of facts.
On November 4,1979 while driving her car in Brooklyn, respondent Grace Rowe was involved in an automobile accident with a vehicle owned and driven by one Johnnie Evans. Claiming that the Evans vehicle was uninsured at the time of the accident, Ms. Rowe sought arbitration against her insurance carrier, petitioner State Wide Insurance Company. State Wide then moved to stay arbitration on the grounds that the Evans vehicle was in fact insured at the time of the accident.
It is agreed that Johnnie Evans was insured by the Federal Insurance Company under a one-year policy effective May 24, 1979. The policy was financed by the Kings Premium Service Corporation under an agreement *162 whereby Mr. Evans, after making an initial down payment of $147, was to make eight monthly payments of $37.40 commencing June 23, 1979. The premium finance agreement contained a power of attorney enabling the premium finance company to cancel the insurance policy on behalf of Mr. Evans. The provisions for cancellation read as follows: “If the insured fails to pay any installment of this note when due or any liability hereunder, then and in such event this note and any liability hereunder, at the option of Kings Premium Service Corp., shall become immediately due and payable without notice or demand and Kings Premium Service Corp. is authorized and empowered (which authorization and power are irrevocable until full compliance with the terms and conditions of this note and full repayment of the indebtedness hereunder) to cancel the policy above with the same full force and effect as if cancelled by the insured himself. Any payments received subsequent to the occurrence of any said events may be credited against the indebtedness without affecting the acceleration of this note or Kings Premium Service Corp’s. rights to cancel and without any obligation on the part of Kings Premium Service Corp. to withhold or withdraw said Cancellation Notice, unless otherwise provided by law. Failure of any payment by check to be collected upon presentation shall constitute a default in this agreement.”
It is conceded that Mr. Evans was late in paying the premium installments. Following the initial down payment, the first payment of $37.40 due on June 23,1979 was received July 18, 1979; the next payment due on August 25,1979 was received on September 25,1979, and the final payment due September 25,1979 was received on September 26, 1979.
On August 30, a notice of intent to cancel was mailed to both Mr. Evans and the broker. The notice stated that the policy would be canceled if the payment due on August 25, 1979 was not received by September 15, 1979. The parties agree that the notice of intent to cancel contained the required size print.
Subsequent to the notice of intent to cancel, a notice of cancellation was sent to Mr. Evans on September 18,1979 *163 notifying him that his policy had been canceled as of September 19, 1979.
It is further agreed by the parties that the notice of cancellation was not filed with the Commissioner of Motor Vehicles.
Subsequent to the aforesaid cancellation, the insurance company returned the unearned gross premiums totaling $257 to Kings and the premium finance company returned a payment in the amounts of $109 and $37 to Mr. Evans.
Petitioner State Wide contends that Mr. Evans was insured at the time of the accident because (1) the notice of cancellation mailed September 18, 1979 was ineffective to terminate his insurance as of September 19, 1979, (2) no notice of cancellation was filed with the Commissioner of Motor Vehicles, and (3) the notice of cancellation contained the financial security clause on the reverse side which made it ineffective.
Respondents contend that Mr. Evans was not insured at the time of the accident because his insurance was properly canceled. They further claim that no filing of a notice of cancellation was required under the law.
Article 12-B of the Banking Law (§ 554 et seq.) regulates insurance premium finance agencies.
The applicable paragraphs of subdivision 1 of section 576 of the Banking Law, as amended in 1978 (L 1978, ch 565, eff Sept. 1, 1978) provide as follows:
“(a) Not less than ten days written notice shall be mailed to the insured at his last known address as shown on the records of the premium finance agency, of the intent of the premium finance agency to cancel the insurance contract unless the default is cured within such ten day period and that at least three days for mailing such notice is added to the ten day notice. A copy of the notice of intent to cancel shall also be mailed to the insurance agent or broker.
“(b) Service, of the notice of intent to cancel or notice of cancellation by mail shall be effective provided that the notices are mailed to the insured’s last known address as shown on the records of the premium finance ágeney. The records of the premium finance agency shall be presumptive evidence as to the correctness of such address * * *
*164 “(d) After the notice in paragraph (a) above has expired, the premium finance agency may thereafter, in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation stating when thereafter the policy shall be cancelled, and the insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract. A copy of the notice of cancellation shall also be mailed to the insured * * *
“(f) The insurer or insurers within a reasonable time not to exceed sixty days after the effective date of cancellation, shall return whatever gross unearned premiums are due under the insurance contract or contracts on a short rate basis to the premium finance agency for the benefit of the insured or insureds.
“(g) Upon the cancellation of motor vehicle liability insurance by a premium finance agency, unless a notice of such cancellation is not required by the vehicle and traffic law or by the regulations of the commissioner of motor vehicles, a notice of such cancellation under the provisions of this article, shall be filed by the insurer or insurers with the commissioner of motor vehicles not later than thirty days following the effective date of such cancellation where such a filing is required pursuant to section ninety-three-c of the vehicle and traffic law, as added by chapter six hundred fifty-five of the laws of nineteen hundred fifty-six or its successor statute, section three hundred thirteen of the vehicle and traffic law as enacted by chapter seven hundred seventy-five of the laws of nineteen hundred fifty-nine.”
The court has reviewed .the case of Ward v Gresham (NYU, July 21, 1981, p 11, col 5) in which a similar set of facts resulted in a declaration that Kings did not effect a valid cancellation of their insured’s policy. However, the court notes that unlike Ward v Gresham, in the case at bar, Kings Premium Service Corporation did return the unearned premiums to its insured. The retention of the unearned premiums by Kings in the Gresham case was apparently a factor which led to a finding that there had not been strict compliance with the Banking Law.
*165 This court cannot agree with the Gresham court’s construction of the amendments to section 576 of the Banking Law, except to the extent that that court rejected the contention that the notice of cancellation was invalid because the financial security clause was on the reverse side of the notice (Banking Law, § 576, subd 1, par [c]).
The Gresham court interpreted the amendments to section 576 of the Banking Law as creating the notice of intent to cancel as an additional requirement, to be superimposed upon the 10-day requirement of the notice of cancellation.
The legislative memorandum issued in connection with chapter 566 of the Laws of 1978 (McKinney’s Session Laws of NY, 1978, pp 1744-1745) reads as follows:
“Purpose
“To provide advance notice of the impending cancellation of automobile insurance to consumers who finance such insurance through premium finance agencies.
“Comment
“Section 576 of the Banking Law currently requires insurance premium finance agencies to give ten days’ unconditional notice of the cancellation of an automobile insurance policy to the insured who has failed to keep up the required payments. Such notice must be sent to the insured at the address appearing on the finance agreement.
“This bill would amend Section 576 to provide an extra three days’ notice; a clear statement that the insurance may be cancelled if payment is not received by a date certain; and that the notice should be sent to the most recent address of the insured on file at the finance agency.”
It is apparent that the Legislature only intended to give the insured an additional three days’ notice.
In the case at bar, the notice of intent to cancel was mailed August 30,1979 to be effective September 15,1979.
No further notice to the insured was necessary since the notice of intent to cancel gave the requisite notice as provided by section 576 of the Banking Law. That section imposes no additional requirement nor makes any cross *166 reference to section 313 of the Vehicle and Traffic Law. Moreover, as clearly stated in Matter of Worrell v Motor Vehicle Acc. Ind. Corp. (58 AD2d 813) it is no longer necessary to file a notice of cancellation of an automobile insurance policy, either under section 576 (subd 1, par [g]) of the Banking Law (by a premium finance company) or under section 313 of the Vehicle and Traffic Law (by the insurer).
For the foregoing reasons, the petition is dismissed.