OPINION OF THE COURT
Jerome C. Gorski, J.
This motion comes before this court by way of the motions for summary judgment made by defendants Ardent Premium Plan, Inc., and Government Employees Insurance Company (GEICO), in action No. 1, above; as well as the motion for summary judgment made by the City of Buffalo in action No. 2, above. Plaintiff has cross-moved for partial summary judgment in each respect.
On March 22, 1993, plaintiff was operating his motor vehicle when he was struck by a car registered to Curtis E. Vance, and operated by Raymond Abrams, which was being chased by the Buffalo Police. The car had been insured through GEICO, and the premium was financed through the Ardent Premium Payment Plan (Ardent). The plaintiff had a policy of insurance through Eagle Insurance Company (Eagle) which included uninsured motorist coverage.
In action No. 1, above, plaintiff seeks a determination of the rights and obligations between himself, GEICO, and Eagle arising out of this accident. Specifically, plaintiff seeks to determine whether the vehicle which collided with him was covered by a valid liability policy with GEICO, or whether plaintiff would have a valid uninsured claim against Eagle. Action No. 2 is the negligence claim against the alleged tortfeasors.
GEICO claims that the policy of insurance it issued to Vance had been properly cancelled by Ardent due to nonpayment. The plaintiff and Eagle claim that the policy had not been properly cancelled, concluding that the plaintiff would not reach his uninsured benefits from Eagle.
Defendant Vance signed a premium finance agreement with Ardent, which gave Ardent the power of attorney to act on behalf of Vance, and permitted Ardent to cancel the policy in the event of nonpayment of the premium. Vance paid none of the monthly payments under this installment agreement. *911 Ardent, on August 3, 1992, mailed Vance a notice of intent to cancel via first class mail. The notice was not returned, and Vance did not respond. Thereafter, on August 21, 1992, Ardent sent Vance a notice of cancellation via first class mail, a copy of which was mailed to GEICO. GEICO considered the policy cancelled as of that date, and returned the unearned premium to Ardent. The notice was not returned and Vance did not respond in any manner.
It is alleged that GEICO did not cancel the policy properly because it did not: (1) file the notice of cancellation with the Commissioner of Motor Vehicles within 30 days of cancellation, per Banking Law § 576 (1) (g) and Vehicle and Traffic Law § 313 (2) (a); or (2) send a notice containing the correct financial security information outlined in 15 NYCRR 34.6, in that the warning provided for a penalty of $4 per day for having a registered but uninsured vehicle (the statute provides for $6 per day).
GEICO, not Ardent, did file the notice of cancellation with the Department of Motor Vehicles on May 3, 1994.
GEICO alleges that Ardent need not comply strictly with the applicable laws because it is merely a finance company acting in place of the insured, not acting as an insurance company. In Ward v Gresham (92 AD2d 468, affd 59 NY2d 878), it was held that it is inappropriate to hold a finance company to the same standards of compliance imposed upon insurers. In that case, the Court also held that it was no longer necessary to file a notice of cancellation with the Department of Motor Vehicles to effect proper cancellation.
GEICO alleges that this case is one of first impression, as there is no case law in this State which interprets the significance of the wrong penalty in the notice of cancellation sent by a premium finance agency.
Superficial discrepancies, however, have been held to have no effect on the policy’s cancellation. Examples of discrepancies that have been excused are as follows: financial security clause on wrong side of notice (State Wide Ins. Co. v Rowe, 112 Misc 2d 161 [1982]); misspelled name of insured (Abuhamra v New York Mut. Underwriters, 170 AD2d 1003 [4th Dept 1991]); and failure to use 8-point type (Matter of State Farm Ins. Co. v Belot, 123 Misc 2d 1076 [1984]).
Plaintiff and Eagle rely on the case of Barile v Kavanaugh (67 NY2d 392 [1986]) for the proposition that in order for a notice of cancellation to be effective, strict compliance with the *912 rules and regulations of the Commissioner of Motor Vehicles is required. In that case, the notice of cancellation sent by the insurer completely failed to inform the insured of the civil penalties for failing to have an uninsured, registered car. The Court of Appeals held that there were two important aspects to the Commissioner’s rules regarding notices of cancellation— (1) that it include a statement that proof of financial security must be maintained; and (2) that it also contain a notice that there would be punitive effects for failing to maintain financial security. (Barile v Kavanaugh, supra, at 397.)
Both of those aspects were made clear in the notices sent to Vance herein. The notice of cancellation contained both notice that proof of financial security must be maintained, as well as notice of certain punitive aspects should he fail to comply. The question before the court is, therefore, whether the error advising the insured that the civil penalty is $4 per day rather than $6 per day violates the regulations, rendering the attempted cancellation invalid.
Considering all of the relevant facts and circumstances of this cancellation, it appears that all of the essential and necessary elements of notice required by law were, in fact, given to the insured. The error in the amount of the civil penalty was inconsequential. The insured was not prejudiced as he never sought to cure the lapse of coverage or pay the lower civil penalty contained in the notice.
Therefore, the policy was properly cancelled by the insurer, GEICO, and thus GEICO is relieved from any duty it may have had under the policy to defend or indemnify its former insured for the injuries arising out of this lawsuit. Thus, GEICO’s motion for summary judgment is granted, and the plaintiff’s cross motion for summary judgment against GEICO is denied in action No. 1, above. The effect of this decision is to render the Vance automobile uninsured and plaintiff’s motion for alternate relief in action No. 1 against Eagle is granted.
In action No. 2, the City of Buffalo moves this court for summary judgment based on the allegations that the plaintiff has not been able to show "reckless disregard for the safety of others” as required by the Court of Appeals in Saarinen v Kerr (84 NY2d 494 [1994]) and Vehicle and Traffic Law § 1104. The plaintiff has cross-moved for summary judgment, claiming that the police officers acted with reckless disregard for the safety of others by pursuing the vehicle at high speeds through the city during rush hour.
The deposition of one of the original, pursuing officers (Carr) revealed that they had stopped the driver, Abrams, for an *913 expired inspection sticker. When confronted on that issue, Abrams sped away from them. Because of that reaction, the officers became suspicious that the car was stolen. Those police officers followed Abrams for a period of time, while Abrams was driving through residential neighborhoods and disregarding stop signs, all the time with the overhead lights flashing and sirens blaring. During the chase, the officers learned that the license plate did not fit the vehicle, and became more concerned that the vehicle was stolen. That police officer was in contact with a dispatcher who terminated the chase several blocks before the accident occurred.
The further affidavit of that officer chronicles the chase, and avers that his police vehicle never exceeded the speed limits and never disregarded a traffic control device even though the car that they were following did so.
The collision occurred between plaintiff and Abrams on E. Amherst and Hill Streets, several blocks from the point where the officer was notified that the chase was suspended, out of the view of that police officer.
Plaintiff asserts that there was no emergency until the police started chasing the Abrams vehicle, thus Vehicle and Traffic Law § 1104 is not applicable to the case at bar. The plaintiff also relies on the affidavit of a witness to the accident who was a passenger in the car directly behind the plaintiff’s at the intersection of E. Amherst and Hill Streets. The witness says that the police arrived "close behind the accident, just a couple of seconds at the most”. A review of the record indicates, however, that the police officers who arrived at the scene were not the officers who were in pursuit of the vehicle initially.
In the case of Lorber v Town of Hamburg (— AD2d —, 1996 NY Slip Op 01982 [4th Dept, Mar. 8, 1996]), the Court held that a police officer has a duty to act " 'swiftly and resolutely’, but prudently” in pursuing an offending driver. The Court further held that where there is a threat to public safety, an officer is " 'duty bound to investigate’ by 'whatever means’ [are] 'necessary, short of the proscribed recklessness to overtake and stop the offending driver’ ” (supra, at —). An important factor to that Court was the fact that the officer broke off the chase out of concern for safety. The Court averred that that action "undercuts the plaintiff’s contention that the officer was heedless of the consequences of his conduct”. (Supra, at —.) Further, the Court found that "the fact that the officer briefly 'exceeded the posted speed limit * * * cannot alone constitute a predicate for liability, since it is expressly privileged under Vehicle and Traffic Law § 1104 (b) (3)’. ” (Supra, at —.)
*914 In the case at bar, the plaintiff has not been able to set forth, in evidentiary form, the requisite recklessness as a matter of law. Plaintiff was not able to show excessive speed on the part of the police officers, nor disregard for traffic control devices. The actions of the police officers were emminently reasonable — they were in constant communication with their dispatcher, and had a reasonable belief that the vehicle was stolen. The police, herein, ended the chase well before the within accident. In Lorber (supra), the Fourth Department granted summary judgment to the Town of Hamburg even though its police officer chased a drunk driver at speeds of up to 80 miles per hour for several miles, then followed him into the Town of Evans and abated the chase just before a hairpin turn in the road. At that turn, the perpetrator came violently into contact with the plaintiff. Certainly, the facts of the case, herein, are much less compelling than those presented in Lorber.
Based on all of the above factors, summary judgment is granted to the City of Buffalo and the Buffalo Police Department.