OPINION OF THE COURT
Thomas P. Phelan, J.
Motion by respondent New York Central Mutual Fire Insurance Company (NYCMF) to reargue the order of this court dated June 30, 1998 permanently staying arbitration against Nationwide Mutual Insurance Company is granted, and upon reconsideration, the court adheres to its original determination.
A motion to reargue is addressed to the sound discretion of the court and may be granted upon a showing that the court overlooked or misapprehended relevant law in arriving at its previous decision. (Delcrete Corp. v Kling, 67 AD2d 1099.) Here, NYCMF argues that in reaching its previous decision, the court erroneously relied on case law that predated the 1978 amendments to Banking Law § 576 relative to finance company cancellations. A review of this allegation is precisely within the scope of a motion to reargue and the court will therefore consider the merits of this charge.
In its original determination, the court held that the premium finance company that arranged for the offending driver’s policy with NYCMF failed to follow the requirements for cancellation of an insurance contract as set forth in Banking Law § 576 (1), thus leaving NYCMF exposed. Specifically, *233 the premium finance company, Premium Payment Plan (PPP), did not produce an unambiguous power of attorney from the insured permitting it to cancel his policy in the event of a default. PPP also failed to provide proper proof that it mailed the notice of intent to cancel and the notice of cancellation. While these defects could have been addressed in a framed issue hearing, the court rejected this option because a third flaw in PPP’s notice — PPP’s failure to provide the insured with 13 full days to cure the default — rendered PPP’s notice of intent to cancel a legal nullity. It is this last finding that NYCMF presently challenges.
As noted in the original determination, Banking Law § 576 (1) (a) specifically requires a premium finance agency to provide “[n]ot less than ten days written notice” to an insured at his last known address when apprising him of an intent to cancel an insurance contract, and further requires that “at least three days for mailing such notice” be added to the 10-day notice. As support for its conclusion that these time restrictions require 13 full days to cure, the court cited Gordon v Nationwide Mut. Ins. Co. (30 NY2d 427) and Union Sta. Rest, v North Am. Co. for Prop. & Cas. Ins. (59 AD2d 270).
NYCMF argues that these cases, which call for strict construction of this 13-day cure period, predate the 1978 amendments to Banking Law § 576, and relate only to the solitary notice of cancellation that was required by the original statute. The 1978 amendments added the requirement that the premium finance company first send a notice of intent to cancel before a final notice of cancellation is issued. According to NYCMF, since the mandated first step merely advises the insured of the finance company’s intent to cancel the policy, but does not in and of itself result in cancellation, strict compliance with the 13-full-day requirement of the previous statute is not required. The court rejects this reasoning.
In State Wide Ins. Co. v Rowe (112 Misc 2d 161), the court expressly examined the effect of the 1978 amendment on the notice requirements of Banking Law § 576 (1). The court quoted the following passage from the legislative memorandum issued in connection with the amendment: “ ‘This bill would amend Section 576 to provide an extra three days’ notice; a clear statement that the insurance may be cancelled if payment is not received by a date certain; and that the notice should be sent to the most recent address of the insured on file at the finance agency.’ ” (State Wide Ins. Co. v Rowe, supra, at 165.) Relying on this passage, Justice DiPaola concluded “[i]t is apparent *234 that the Legislature * * * intended to give the insured an additional three days’ notice.” (Supra.) Since the notice of intent to cancel provided the insured with the requisite 13-day notice, and the premium finance company subsequently mailed the notice of cancellation in accordance with § 576 (1) (d), the court held that the offending driver’s policy was cancelled prior to the subject accident.
The holding in Rowe (supra) is consistent with basic principles of statutory interpretation. “When statutory language is unambiguous, a court will ordinarily give effect to the plain meaning of the words and apply the statute according to its express terms” (Matter of Tucker v Board of Educ., 82 NY2d 274, 278). Thus, statutory notice requirements are to be strictly construed. (Supra.) Indeed, a premium finance company must comply strictly with all of the requirements of Banking Law § 576, including those incorporated by reference. (Foster v Abrams, 242 AD2d 952, 953.) Moreover, a company claiming cancellation has the burden of establishing strict compliance with these notification requirements. (Raphaely Galleries v Lumbermens Mut. Cas. Co., 191 AD2d 680, 681.)
Here, the plain meaning of 13 days is 13 full days, with each day consisting of 24 hours. (General Construction Law § 19.) The need for strict compliance with this 13-day requirement as it relates to a notice of intent to cancel is no less compelling than it was for the preamendment notice of cancellation, especially in light of the fact that “§576 does not contain any grace period between the last day to cure any default under the notice of intent to cancel and the actual date of cancellation.” (Lustig, Cancellation of an Automobile Policy By a Premium Finance Company, NYLJ, Oct. 3, 1997, at 1, col 1, at 38, col 1.) Under the present scheme, the notice of cancellation, while a necessary step in the process, is merely proof of a fait accompli which results from the proper service of the notice of intent to cancel and the insured’s default thereunder. (Banking Law § 576 [1] [d]; State Wide Ins. Co. v Rowe, supra, at 165-166.)
The court further rejects NYCMF’s argument that PPP gave the insured, Kofi Hampton, 13 full days to cure the default. As this court noted in its original determination, the notice of intent to cancel was allegedly mailed on May 15, 1996, and listed May 28, 1996 as the cancellation date. Pursuant to the terms of the notice, the policy was to be canceled at 12:01 a.m. eastern standard time on May 28, thus giving the insured only 12 full days and 1 minute to cure the default. The fact that PPP did not process the final cancellation notice until 3:00 *235 p.m. the next day, May 29, 1996, and that such notice did not become effective until the following day, May 30, 1996, is of no moment. The insured was not aware of the internal procedures of the premium finance agency and had no notice of his right to cure up to the 14th day. A notice required by law must clearly state the terms upon which its intended recipient may rely. Nothing should be left to guesswork. This is especially so when dealing with the cancellation of insurance policies, where strict adherence rather than substantial compliance with the requisite provisions is necessary to effectuate cancellation. (Federal Ins. Co. v Rivera, 122 Misc 2d 506, 509.)
While the court is sympathetic to the burden this ruling might place on PPP and other premium finance companies, it is constrained to apply the law as written, give effect to the plain meaning of its words, and provide insureds with all the rights conferred by statute. Accordingly, the court adheres to its original determination dated June 30, 1998 granting the petition of Nationwide Mutual Insurance Company and permanently staying respondent’s demand for arbitration.