UNION STATION RESTAURANT, INC., et al., Respondents, v NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE, Appellant, and SAMUEL C. SANSONE et al., Respondents.

Fourth Department, November 4, 1977

*Cohen, Lombardo, Blewett, Fisher, Hite & Spandau (Richard N. Blewett* of counsel), for appellant.

*Duke, Holzman, Yaeger & Schlopy (Barry L. Radlin* of counsel), Union Station Restaurant, Inc., and another, respondents.

*Saperston, Day & Radler (Herbert J. Lustig* of counsel), for Samuel C. Sansone, respondent.

*Hurwitz, Siegel & Hurwitz (Sheldon Hurwitz* of counsel), for Imperial Bank, respondent.

MARSH, P. J. Defendant North American Company for Property and Casualty Insurance appeals from an order of Special Term which granted plaintiffs' motion to dismiss defendant-appellant's first affirmative defense set forth in its answer, granted plaintiffs' motion for summary judgment upon plaintiffs' first cause of action alleged in the complaint and directed assessment of damages therefor.

Plaintiffs allege in the first cause of action in their complaint that plaintiff Union Station Restaurant, Inc. is a New York corporation which owned and operated a restaurant business known as Union Station Restaurant at 95 Union Street, Lockport, New York, and also owned certain of the restaurant personalty. Plaintiff Union Station Properties, Inc., a New York corporation, owned the real property located at 95 Union Street, Lockport, New York, in which the restaurant was operated. Defendant-appellant on December 5, 1973 issued a standard form fire insurance policy to plaintiff Union Station Restaurant, Inc. covering the building, contents and income loss in the total amount of $360,000 for a three-year premium of $11,910. In paragraph seventh of the first cause of action it is alleged that the policy was issued solely to Union Station Restaurant, Inc., not naming as well Union Station Properties, Inc.* as its interest may appear.

Plaintiffs allege that the absence of properties as a coinsured on the fire policy was not noticed by plaintiffs until the property at 95 Union Street was totally destroyed by fire on December 17, 1974. Plaintiffs in their first cause of action further assert that due notice of loss was furnished to North American, that 60 days elapsed subsequent to the delivery of notice of proof of loss and demand for the policy coverage of $360,000 and that the action was commenced within 12 months from the time of loss. Further, that North American failed to issue a policy naming properties as a coinsured and also failed to pay the amount due under the policy through willful, deliberate and bad faith abrogation of its contractual obligations to plaintiffs and that the failure of North American to pay the policy face amount caused plaintiffs direct damages of the full policy amount and consequential damages caused to its credit, reputation and inability to carry on its business, in the amount of $750,000.

In the first complete affirmative defense North American alleged that plaintiffs' policy referred to in the first cause of action was canceled effective November 7, 1974 and prior to the occurrence of plaintiffs' fire loss. Plaintiffs moved pursuant to CPLR 3211 (subd [b]) to strike the first affirmative defense and for summary judgment upon their first cause of action

---

* Hereinafter Union Station Restaurant will be referred to as "restaurant", Union Station Properties, Inc. will be referred to as "properties" and defendant-appellant North American Company for Property and Casualty Insurance will be referred to as "North American".

pursuant to CPLR 3212, alleging that no factual issue exists under the first cause of action other than the assessment of damages.

Plaintiffs entered into a premium financing agreement with defendant Imperial Bank, a California corporation. Robert J. Cycon, a vice-president of Imperial Bank in charge of premium finance, alleges in an affidavit that it executed a premium finance agreement with plaintiff restaurant wherein it agreed to pay the premium to North American of $11,910 in consideration for a finance charge of $1,638, payments to be made in installments on the fifth of each month commencing on January 5, 1974 in the amount of $368, totaling 33 installments. A notice of intent to cancel the North American policy for nonpayment of premium dated October 31, 1974 was sent by Imperial Bank to restaurant with November 7, 1974 the effective date of cancellation. The notice was prepared in accordance with section 673 of the California Insurance Code.

Counsel for North American asserts that North American also sent to plaintiffs a cancellation notice dated October 28, 1974 effective at noon on November 7, 1974. The affidavit of Paul G. Fargo, assistant counsel of North American, merely asserts that such a cancellation notice was found in the underwriting file for plaintiffs' policy, but does not assert that it was actually sent to plaintiffs. The notice asserts that the cancellation is for nonpayment of premium. Section 576 of the Banking Law provides:

"1. When a premium finance agreement contains a power of attorney or other authority enabling the premium finance agency to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled unless such cancellation is effectuated in accordance with the following provisions:

"(a) Not less than ten days unconditional written notice be served upon the insured or insureds shown on the premium finance agreement that his or their insurance contract or contracts shall be cancelled. The exact time and date of the cancellation must be set forth in such notice.

"(b) Service of the notice by mail shall be effective provided that the notice is mailed to the address of the insured or insureds shown on the premium finance agreement and that at least three days for mailing such notice is added to the ten day notice period."

The premium finance agreement between Imperial Bank

and plaintiffs in the fifth paragraph appoints Imperial Bank as attorney in fact with authority to cancel the scheduled fire insurance policy in the event of default in an installment payment. The notice of intent to cancel mailed by Imperial Bank to restaurant did not give the required 13 days' notice mandated by section 576 of the Banking Law. Robert Cycon, vice-president in charge of premium finance for Imperial Bank, asserts that the notice of intent to cancel was mailed on October 31, 1974 to Union Station Restaurant with the effective date of November 7, 1974. This is six days short of the statutory requirement, not counting the day of mailing. A notice of cancellation by a premium finance agency operating under a power of attorney in fact for nonpayment of installments must give 13 full days' notice and where such notice is sent with a cancellation date of less than 13 days from the date of mailing, such cancellation is a nullity *(Johnson v General Mut. Ins. Co.,* 24 NY2d 42, 48; *Rotsettis v Nationwide Mut. Ins. Co.,* 58 Misc 2d 667, affd 31 AD2d 722, mot for lv to app den 23 NY2d 646; see, also, *Gordon v National Mut. Ins. Co.,* 30 NY2d 427; *Cannon v Merchants Mut. Ins. Co.,* 35 Misc 2d 625).

North American does not seriously dispute that Imperial Bank did not comply with New York law when it sent the policy cancellation notice. In argues that the five-day notice required by California law is applicable. This argument is not well grounded. The only connection California has to the case is the fact that Imperial Bank is incorporated under the laws of California. The property insured is real and personal property with actual situs in the State of New York insured by a fire insurance company licensed to issue policies in New York where the insurance contract was placed with a New York agency and the loss occurred in New York. North American cites section 195 of the Restatement 2d, Conflict of Laws for the proposition that the validity of a contract for the repayment of money and rights created by the contract are determined by the law of the place of repayment of the money. However, the Restatement also states in the same section that if another place has a more significant relationship to the transaction than the State where the money is to be repaid, then that State's law will be applied. New York public policy would require an application of article 12-B of the Banking Law of New York in order to protect its insureds and property owners and certainly would not permit foreign premium

financing institutions greater latitude in the area of cancellation notices than their domestic counterparts. Failure to comply with section 576 of the Banking Law made the notice of cancellation sent to plaintiffs ineffective to cancel the policy.

Paul G. Fargo, an assistant counsel for North American, in his affidavit, does not assert that the notice signed by Richard Mamarella which canceled plaintiffs' policy effective at noon on November 7, 1974 and is dated October 28, 1974 was ever sent by North American. It is averred that it was merely discovered in the file. The notice on its face asserts the reason for cancellation as nonpayment of premium. It is conceded that North American received a full three-year premium from Imperial Bank. The vice-president of Imperial Bank asserts that its notice of cancellation was not sent until October 31, 1974 and that no advance notice was given to North American. The certification on the North American notice states that a receipt was received from the post office and is attached to the carbon copy; however, no postal receipt was attached to the copy submitted by North American. North American does not assert that it mailed the cancellation notice signed by Richard Mamarella to plaintiffs. A motion for summary judgment shall be granted unless a party shows facts sufficient to require a trial on any issue of fact other than that of damages (CPLR 3212, subd [b]). North American has failed to raise a triable issue with respect to the question of mailing of the notice of cancellation to plaintiffs, since it neither alleges a mailing nor presents evidentiary proof of mailing. Its evidence presented in the record in an attempt to establish an issue of fact with respect to the question of mailing, fails to raise a factual issue and cannot defeat plaintiffs' motion for summary judgment with respect to the issue of a valid notice of cancellation (*Indig v Finkelstein,* 23 NY2d 728; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05c).

North American asserts no reason for opposing the reformation of the fire policy to include as a coinsured properties, the owner of the real property and some of the personalty. North American does not assert that had it been requested to include Union Station Properties, Inc., it would have had reason to deny Union Station Properties, Inc. coverage as a coinsured.

"Prima facie, when it is established that, through innocent mistake of an applicant for insurance, the nature of the ownership of the property to be insured, whether individual or

corporate, is misdescribed, the error is mutual for purposes of reformation, even though the insurer is not aware of the error * * *. The policies correctly stated the character and location of the merchandise insured. Without proof of concealment by plaintiff or its broker with the intent to deceive defendants, or proof that defendants, for good and sufficient reason, would not have accepted the risk, plaintiff would be entitled to reformation on the showing of mistake by both parties in the description of the owner in the policies. The retention of the policies without discovery of the error until the happening of the loss is not of itself fatal to plaintiff's cause for reformation * * *. There was lacking in this record sufficient proof that defendants would not have issued the policies if they had known of the corporate ownership" (Court Tobacco Stores v Great Eastern Ins. Co., 43 AD2d 561).

No reason is asserted by North American for opposing the reformation of the insurance contract to include the name of properties as a coinsured as interest may appear and reformation was therefore properly granted by Special Term.

Special Term in its memorandum and order also granted summary judgment upon plaintiffs' claim for consequential damages based upon the bad faith refusal of North American to pay the policy limits upon proof of loss. In Gordon v Nationwide Mut. Ins. Co. (30 NY2d 427, 437) the Court of Appeals states:

"But a punitive measure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract. * * *

"No authoritative case in New York has ever allowed recovery against an insurer beyond the policy limits where the insured had in fact failed to make payment under a premium financing contract and the insurer's bad faith was a mistaken belief the policy had lawfully been canceled for this reason". (Cf. Johnson v General Mut. Ins. Co., 24 NY2d 42, supra.)

The fact that North American refused to pay the policy amounts in reliance upon the cancellation notice of Imperial Bank and its own cancellation notice does not establish bad faith which can be determined as a matter of law upon a motion for summary judgment. In light of Gordon v Nationwide Mut. Ins. Co. (supra), it is doubtful that plaintiffs will be able to establish the bad faith which would entitle them to

exceed the policy limits. However, at the very least, a question of fact exists which should be explored upon a plenary trial.

The order appealed from should be modified by deleting that portion which grants summary judgment on plaintiffs' claim for consequential damages except for the assessment of damages, and directing that plaintiffs establish upon a plenary trial not only the amount but defendant-appellant's liability for any such consequential damages beyond policy limits, and as so modified, affirmed.

MOULE, DENMAN, GOLDMAN and WITMER, JJ., concur.

Order unanimously modified in accordance with opinion by MARSH, P. J., and, as modified, affirmed, without costs.