OPINION OF THE COURT
Bernard L. Reagan, S.
This is a proceeding to fix and determine the liability of the Home Indemnity Company as surety on the bond of Mary Schiavone as executrix of the estate of Catherine Camarda.
On March 27, 1972, Mary Schiavone was duly appointed the executrix of the last will and testament of Catherine Ca *363 marda, she having duly qualified, and by giving and filing her bond in the amount of $50,000 with the Home Indemnity Company as security thereon.
A petition to compel the executrix to account was filed by Rose Camarda Conroy and Nicholas Camarda on November 13, 1974. The executrix filed her accounting on February 11, 1975, and a supplemental account was filed on January 4, 1977. Two of the legatees under the last will and testament of Catherine Camarda, Rose Camarda Conroy and Nicholas Camarda, filed objections to said account.
The court, after a hearing, filed its decision in writing on April 29, 1977 and an order was made based on said decision on July 15, 1977. An appeal was taken by the executrix to the Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department, and the order so appealed from was unanimously modified, and affirmed as modified (Matter of Camarda, 63 AD2d 837).
On or about July 13, 1978, this court granted an order making the order of the Appellate Division, Fourth Judicial Department, the order of this court.
Thereafter on June 8, 1979, this court made an order settling the surcharges, fixing the compensation of the attorneys for the petitioners and settling the accounts of the said Mary Schiavone as executrix.
Payment of the sums of money pursuant to the decree dated June 8, 1979 was not paid by the executrix, Mary Schiavone, and on or about August 9, 1979, the attorney for the legatee, Nicholas Camarda, petitioned the court praying for a decree fixing the liability of the Home Indemnity Company in the amount of $47,773.80, with interest thereon, from June 8, 1979.
The Home Indemnity Company, hereinafter referred to as the Surety, now resists the relief prayed for and sets up as a defense that the executrix, Mary Schiavone, converted the moneys of her mother to her own use on the same or following day of her mother’s death, one year prior to the date she was appointed executrix. The Surety now disclaims liability for any misappropriation of funds occuring prior to the date of its bond. The Surety also objects to the granting of attorney’s fees for the petitioner’s attorney.
A brief review of the law of suretyship as it effects the case at bar might be helpful.
*364 Suretyship may be defined as a contractual relationship whereby one person engages to be answerable for the debt or default of another (Stearns, Law of Suretyship [5th ed], p 1).
The surety has always in the past been particularly favored by both legal and equitable tribunals, the reason being he customarily received no benefit from the transaction. More recent cases, however, do not show any tenderness in determining the extent of his obligation. The reason for this is the fact the surety in most cases is compensated and has the power to fix the amount of his compensation to cover his financial responsibility (Village of Argyle v Plunkett, 226 NY 306).
Every suretyship involves three parties: (1) principal, whose debt or default is the subject of the transaction, (2) obligee, one to whom the debt or obligation runs, (3) surety, one that undertakes to perform the debt or obligation if the principal does not.
No one incurs a liability to pay a debt or perform a duty for another unless he expressly agrees to be so bound, for the law does not create relations of this character by mere implication. Strictly speaking, therefore, suretyship arises only by express contract of the parties.
The terms of the contract are given their ordinary and usual meaning and nothing is to be read into the contract that is not implicit in the language used by the parties.
The liability of a surety on statutory undertakings is measured by the terms of the statute rather than by the terms set forth in the agreement, where the two are in conflict, as the statute forms a controlling part of every such agreement.
The form of the bond is provided for by statute (SCPA 801, 805, 808).
The words of the statute as contained in SCPA 808 (subd 1) are as follows: "A fiduciary is liable for money or other personal property of the estate which was in his hands or under his control when his letters were issued in whatever capacity it was received by him or came under his control.”
The liability of the sureties is measured by the terms and conditions of the bond (Spencer, Suretyship, par 315).
Resort must be had to the language of the bond itself to determine when the liability of the surety commences and when it terminates.
The executrix’ surety bond states: "The condition of the *365 above obligation is such that if the above bounden, Mary Y. Schiavone, shall faithfully execute the trust reposed in her as Executrix of all and singular the goods, chattels and credits of Catherine Camarda, late of Onondaga County, deceased, and obey all lawful decrees and orders of the Surrogate’s Court of the County of Onondaga touching the administration of the estate committed to Mary Y. Schiavone including but not limited to orders directing repayment of amounts as advances on commissions and render a verified account of their administration whenever required to do so by the Court, then this obligation to be void, else to remain in full force and virtue.”
A review of the record discloses that the Surety waived process and consented that a decree be made settling the account of Mary Y. Schiavone, by instrument dated November 22, 1974. Although the Surety was notified of all subsequent proceedings involving objections to the account by legatees, and a supplemental account filed by Mary Y. Schiavone, it failed to appear or file any objections of its own. Since the Surety had notice and the opportunity to defend in the name of his principal, he should not now be allowed to object to the order of June 8, 1979.
The court required the executrix to file a bond at probate after allegations were made by a legatee, Rose Camarda Conroy, that Mary Schiavone had converted certain estate property to her own use. A bond in the amount of $50,000 was required to be posted, even though the executrix estimated all estate property to be worth only $15,500. Bank accounts at issue amounted to approximately $31,000.
Subsequent objections to the executrix’ accounts mostly involved allegations that Mary Schiavone failed to account for estate money which she received following decedent’s death.
While it is alleged that the money was dissipated by the executrix before the bond was secured, it is not agreed upon between the parties to the proceeding.
It cannot be presumed that Schiavone converted the money to her own use prior to the time the bond was executed (Matter of Fardette v United States Fid. & Guar. Co. of Baltimore, Md., 86 App Div 50).
There is no proof tending to show whether the executrix has the money at issue in her hands at this time. Her attorney has avoided the proceedings to date and there has never been a denial that she might still have the funds in one form or another. Nevertheless, she refuses to comply with the court’s *366 order of June 8, 1979 requiring payment of legacies and attorneys’ fees, and the petitioner has chosen to pursue his relief under the bond.
It is argued that the undertaking in the case at bar has wording which is future in nature and upon the face of the bond there can be based no liability for past failures of the executrix committed prior to the date of the undertaking, March 8, 1972.
The bond executed by Mary Y. Schiavone does not in terms limit its liability to the acts of the executrix after the execution of the instrument. The bond is general in terms, conditioned upon the faithful performance by the executrix of the duties of her trust.
Under such circumstances, the surety upon the bond of an executrix becomes liable for the breaches of trust of the executrix committed prior to becoming such surety, as well as for those committed subsequent thereto (Elizalde v Murphy, 163 Cal 681).
The words of the bond do not show, on their face, that the obligation of the Surety is limited to future transactions and to property which would thereafter come into the hands of the executrix (Gottsberger v Taylor, 19 NY 150; Scofield v Churchill, 72 NY 565).
By order dated June 8, 1979, the executrix has been held accountable for $58,435.22, which sum includes the bank accounts at issue since time of probate. It is alleged the executrix has squandered most of the money and the petitioner now looks to the surety for payment.
The funds came rightfully into the executrix’ hands after the death of the testatrix (2A Warren’s Heaton, Surrogates’ Courts, § 167, par 3, cl [c]; People ex rel. Gould v Barker, 150 NY 52). It then became her duty as the nominated executrix to preserve the funds for distribution at the proper time according to the directions of the will (EPTL 11-1.3).
The executrix must account for all of the assets of the testatrix’ estate which came in her possession or were under her control, either with or without the assertion of her authority as executrix. These are equitable assets in her hands for distribution (Matter of Schaefer, 34 Misc 34).
Since the obligation as executrix is to pay, receive, and marshall the assets and to administer the estate as directed by the will, there can be no objection available to the sureties *367 on her official bond as executrix that prior to the filing of the bond or prior to the time of her appointment as executrix, she had misappropriated and converted to her own use the funds which came to her as executrix. She had received the fund in this fiduciary capacity and was under duty to dispose of it in the administration of the estate. She, in legal contemplation of her appointment as executrix, had estate assets in her custody at the time the probate decree was made. For the purposes of the effectiveness of the obligation assumed by the Sureties on their official bond, the liability of the executrix to account for the fund is conclusive and she is charged with having the requisite sums (Matter of Noll, 10 App Div 356, affd 154 NY 765).
Assume, arguendo, the bond was limited to future transactions and the funds were dissipated prior to the appointment of the executrix and the issuing of the bond; the time is past to use this objection, since the order of the court of June 8, 1979 is final. The surety is bound by a decree which binds the principal (Beckett v Place, 12 Misc 323; Power v Bermester, 12 NYS 25).
An executrix cannot justify her failure to perform an order of the court. She has no discretion in this respect; it is a duty which, by the terms of the bond must be observed. Therefore, when the executrix did not pay over to the heirs the amount of their legacies and otherwise refused to comply with the order of this court, it is a breach of the bond.
The court further notes that the amount of the bond posted by the executrix on probate, and consequently the premium received thereon by the Surety, was fixed on the basis that the executrix might be required to account for the disputed bank accounts. By court order on June 8, 1979 she was, indeed, required to account for these moneys.
Thus, the court finds the liability of the Surety, Home Indemnity Company, to be the amount of $47,773.80 ($58,435.22 less Mary Schiavone’s legacy of $10,661.42), plus interest computed at the legal rate from June 8,1979.
The attorneys’ fees as set forth in the decree are proper. The attorneys for the petitioner clearly benefited the estate and the fees and disbursements are fair and reasonable (SCPA 2110, 2301, subd 2; Matter of Potts, 213 App Div 59, affd 241 NY 593; Matter of Freeman, 34 NY2d 1).
Furthermore, since the court has allowed the attorneys’ fees and entered an order for their payment on June 8, 1979, it *368 becomes a charge of the estate, and the failure to comply is a breach of the bond.
The court fixes no offsets or charges against Rose Camarda Conroy since she was not in a fiduciary relationship and there is no proof that she knowingly participated in any wrongdoing.