PRINCETON RESTORATION
CORP., Plaintiff,

v.

INTERNATIONAL FIDELITY INSUR-
ANCE CO., Defendant/Third–Party
Plaintiff,

v.

Lawrence E. Schwartz, et al.,
Third–Party Defendants.

No. 00 CV 6591 NG SMG.

United States District Court,
E.D. New York.

Sept. 27, 2004.

Hollander & Strauss, LLP by Michael R. Strauss & Manny A. Frade, Great Neck, NY, for plaintiff.

Sills Cummins, Epstein & Gross, PC by Loryn P. Riggiola, New York City, for defendant.

### *ORDER*

GERSHON, District Judge.

The Report and Recommendation of the Honorable Steven M. Gold, Magistrate Judge, dated September 1, 2004, to which no objections have been filed, is adopted in its entirety. For the reasons so clearly and persuasively set forth by Judge Gold, plaintiff's motion for leave to file a second amended complaint is granted, plaintiff's motion for partial summary judgment is denied, and defendant's motion for summary judgment is also denied.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

GOLD, United States Magistrate Judge.

### INTRODUCTION

Princeton Restoration Corporation ("Princeton") seeks in this action to recover amounts it claims are due to it under a performance bond issued by defendant International Fidelity Insurance Company ("IFIC"). Princeton has moved for leave to file a second amended complaint adding a cause of action to reform the bond issued by IFIC, and for partial summary judgment dismissing certain affirmative defenses asserted by IFIC against it. IFIC has cross-moved for summary judgment dismissing each of Princeton's claims.

The performance bond issued by IFIC does not name Princeton as an obligee. The dispute between the parties hinges upon whether Princeton's attempt to amend its complaint to assert a claim that the IFIC bond should be reformed to name it as an obligee is futile or should be permitted to proceed. United States District Judge Gershon has referred the parties' cross-motions to me for report and recommendation. For the reasons stated below, I respectfully recommend that Princeton's motion for leave to amend be granted, that its motion for partial summary judgment be denied, and that IFIC's motion for summary judgment be denied as well.

### FACTS

In November of 1997, Princeton was hired to be the general contractor on a

school construction project known as the Public School 104 Exterior & Roof Project (the "project"), to be performed in Brooklyn, New York. Princeton was retained by a joint venture formed by the Tishman Construction Corporation of New York and Jet Resources, Inc. ("Tishman/Jet"), which had in turn been selected to serve as the construction manager for the project by the New York City School Construction Authority ("SCA"). Pl. R56.1 ¶ 1; Def. R56.1 ¶¶ 1–2.[1]

In January of 1998, Princeton, as general contractor, subcontracted with L & M Larjo ("Larjo") to perform certain roofing and masonry work. Pl. R56.1 ¶ 7; Def. R56.1 ¶ 3. The negotiations leading to the subcontract were conducted, at least in part, by Princeton's former vice president, Peter Lacagnina, and Larjo's president, Jeffrey Schwartz. Pl. R56.1 ¶ 6.

Princeton had previously begun the process of obtaining performance and payment bonds as principal naming Tishman/Jet and the SCA as obligees. Pl. R56.1 ¶ 2; Affidavit of Peter Lacagnina ("Lacagnina Aff."), ¶ 3. As a condition of issuing these bonds to Princeton, Princeton's bond broker insisted that the masonry and roofing subcontractor on the project be bonded as well. Pl. R56.1 ¶ 3; Affidavit of Robert Scavetta, Vice President of Princeton's former bond broker ("Scavetta Aff."), ¶¶ 3–4. Accordingly, Princeton obtained Larjo's agreement to provide performance and payment bonds in connection with its subcontract on the project. Pl. R56.1 ¶ 7; Def. R56.1 ¶ 5.

It is undisputed, however, that Princeton failed to inform Larjo who the obligee named in its payment and performance bonds should be. Pl. R56.1 ¶ 12; Def. R56.1 ¶ 6; Lacagnina Dep. at 21. It is also undisputed that Princeton provided Larjo with a specification book which contained, among other things, preprinted bond forms designating Tishman/Jet, rather than Princeton, as the performance bond obligee. Def. R56.1 ¶¶ 8, 13; Lacagnina Dep. at 22–23.

Larjo's president, Jeffrey M. Schwartz, arranged for his assistant to send a "bond request form" to Larjo's bond broker. Schwartz had no understanding of who was intended to be the obligee on the bonds. Pl. R56.1 ¶ 11. Because Schwartz used the bond forms supplied by Princeton, the request form forwarded by his assistant to Larjo's broker designated Tishman/Jet as the obligee and made no mention of Princeton. Pl. R56.1 ¶ 19; Def. R56.1 ¶¶ 11–14. As a result, at the time IFIC approved the bonds, its underwriter was not aware that Larjo was a subcontractor to Princeton, or that Larjo did not have a contract with Tishman/Jet. Pl. R56.1 ¶ 20. The performance bond issued by IFIC on behalf of Larjo accordingly designates Tishman/Jet and the SCA as the obligees on the bond, and furthermore states that "[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than Tishman/Jet and the [School Construction] Authority." Def. R56.1 ¶ 23.

When Lacagnina of Princeton received the Larjo performance and payment bonds, he did not review their text, and he thus did not become aware at that time that they incorrectly named Tishman/Jet and the SCA as obligees. Pl. R56.1 ¶ 17. The performance and payment bonds are five and six pages long, respectively. The substantive language of each bond appears on its first two pages, and in each case identifies Tishman/Jet as the obligee in

---

1. "Pl. R56.1" refers to Princeton's Local Civil Rule 56.1 Statement in support of its cross-motion for partial summary judgment. "Def. R56.1" refers to IFIC's Local Civil Rule 56.1 Statement in support of its motion for summary judgment.

four separate paragraphs. Lacagnina Aff., Ex. D. The bonds explicitly refer to a contract between Larjo and Tishman/Jet, and incorporate the terms of that contract by reference. *Id.* Nevertheless, it was only months later, when Larjo was about to default, that Princeton became aware that Larjo's performance bond named Tishman/Jet and not Princeton as the obligee. Lacagnina Dep. at 32; Lacagnina Aff. ¶¶ 6–7; Def. R56.1 ¶¶ 25–26. Princeton asked to have the bond changed to reflect its status as the intended obligee, but IFIC refused its request. Pl. R56.1 ¶¶ 24–25; Def. R56.1 ¶ 29; Lacagnina Dep. 32–33.

In October of 1998, Larjo abandoned the project, and Princeton and Larjo agreed at that time that Princeton would take responsibility for completion of the remaining work on Larjo's subcontract. Pl. R56.1 ¶ 26. Princeton retained a new subcontractor to finish Larjo's work at a cost which exceeded the outstanding balance of the subcontract price. Pl. R56.1 ¶ 27. Although Princeton has demanded payment from IFIC for these excess costs, IFIC has refused to pay.

## DISCUSSION

IFIC seeks summary judgment on the grounds that Princeton is not a named obligee on the Larjo performance bond, and that the bond expressly disclaims liability to any potential unnamed third-party beneficiary. In response, Princeton does not contend it is entitled to recover on the bond as it is currently written. Rather, Princeton's opposition to summary judgment rests upon its position that the bond should be reformed to name Princeton as an obligee.

Princeton's reformation claim is set forth only in its proposed second amended complaint. Thus, whether Princeton may successfully oppose defendant's motion depends upon the outcome of its own motion

for leave to amend. Accordingly, I address Princeton's motion first.

### A. Standards Governing Motions for Leave to Amend

A party may amend its pleading by leave of court, which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend may properly be denied, however, if the proposed amendment would be futile. *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001) (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

Generally, when a party seeks leave to file an amended pleading, futility is measured by whether the proposed amendment is sufficient to withstand a motion to dismiss for failure to state a claim; put another way, a proposed amended complaint will not be considered futile unless it appears beyond doubt that plaintiff could prove no set of facts entitling him to relief. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). However, where, as here, a plaintiff seeks leave to amend in a cross-motion made in response to a defendant's motion for summary judgment, and

> the parties have fully briefed whether the proposed amendment could raise a genuine issue of fact and have presented all relevant evidence in support of their positions... [then] even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when ... the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c).

*Milanese,* 244 F.3d at 110.

### B. Grounds for Reformation of Written Instruments

 New York law recognizes that, "[i]n the proper circumstances, mutual

mistake or fraud may furnish the basis for reforming a written agreement." *Chimart Assoc. v. Paul,* 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986).[2] Princeton does not claim to have been defrauded, but instead contends that reformation is warranted here because of mutual mistake. A case of "mutual mistake" arises when "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement." *Id.*

■ Because the law presumes that a signed written agreement reflects the true intention of the parties to it, it imposes a high burden on a party seeking reformation. *Id.* at 574, 498 N.Y.S.2d 344, 489 N.E.2d 231.

> Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties.... It follows that a petitioning party has to show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.

*George Backer Mgmt. Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978). Following this reasoning, courts have required parties seeking to reform contracts to establish mutual mistake by clear and convincing evidence. *See Healy v. Rich Products Corp.* 981 F.2d 68, 73 (2d Cir. 1992); *Seebold v. Halmar Constr. Corp.,* 146 A.D.2d 886, 536 N.Y.S.2d 871, 872 (3d Dept.1989).

When deciding a motion for summary judgment, courts must take into account the evidentiary burden of proof applicable at a trial on the merits and measure the evidence submitted against that burden of proof. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). New York courts have therefore "required a party resisting pretrial dismissal of a reformation claim to tender a 'high level' of proof in evidentiary form." *Chimart,* 66 N.Y.2d at 574, 498 N.Y.S.2d 344, 489 N.E.2d 231 (*citing Sagan v. Sagan,* 53 N.Y.2d 635, 637, 438 N.Y.S.2d 782, 420 N.E.2d 974 (1981)).

## C. Plaintiff's Claim for Reformation

■ A surety bond reflects an agreement between three parties: the principal, whose debt or default is the subject of the bond; the obligee, to whom the principal owes either a debt or a duty of performance; and the surety, who undertakes to pay the debt or perform the obligation if the principal fails to do so. *Estate of Camarda,* 103 Misc.2d 362, 425 N.Y.S.2d 1012, 1015 (1980). Thus, to defeat summary judgment, Princeton must adduce sufficient proof to support a finding, by clear and convincing evidence, that it, Larjo and IFIC agreed that IFIC would issue a surety bond naming Princeton as the obligee.

Princeton argues that IFIC must have intended for it to be the obligee on the Larjo bond because Princeton, as the general contractor on the project, was the party responsible for seeing that the work subcontracted to Larjo was completed in the event of Larjo's default. Princeton also emphasizes that, although the performance bond explicitly refers to a contract regarding the project between Larjo and Tishman/Jet, and even incorporates the terms of that contract by reference, the only contract Larjo made was its subcontract with Princeton; there is no con-

---

2. Both Princeton and IFIC rely upon New York law in their memoranda of law.

tract between Larjo and Tishman/Jet.[3] Thus, argues Princeton, the performance bond must reflect a mistake, because it refers to and incorporates the terms of a contract which does not exist.

IFIC contends that Princeton has failed to present any evidence of mutual mistake. Rather, IFIC maintains that it intended to issue the performance bond precisely as written, naming Larjo as the principal and Tishman/Jet as the obligee. IFIC points out that no one from Princeton ever told anyone at Larjo who was to be named as the obligee, and that no one from Larjo told IFIC anything about Princeton whatsoever. IFIC, in short, had no reason to believe Princeton was even involved in the project in any way at the time it issued the Larjo performance bond, and certainly never agreed to issue a bond naming Princeton as the obligee.

■ Clearly, the parties intended that the performance bond issued by IFIC would guarantee Larjo's performance on the project. Because Larjo's subcontract was with Princeton, and because Princeton was responsible for completing Larjo's work in the event of Larjo's default, Princeton's argument that it, and not Tishman/Jet, was the intended obligee on the bond—even if IFIC did not explicitly know of Princeton's involvement in the project— is persuasive.

As Princeton points out, courts addressing errors in insurance policies have held that reformation may be proper even when the insurer was not explicitly aware that the policy as written failed to name a party or describe property as intended by the policyholder. For example, in *Court Tobacco Stores, Inc. v. Great Eastern Ins. Co.,* 43 A.D.2d 561, 349 N.Y.S.2d 8 (2d Dep't 1973), a fire insurance policy covering a tobacco shop identified the shop owner as "Court Tobacco Co., 1110 Eastern Parkway, Brooklyn, New York" rather than by its true name, "Court Tobacco Stores, Inc." The defendant insurance company opposed reformation of its policy on the grounds that it was the plaintiff insured's broker who had requested coverage in the incorrect name, and that the insurer had thus not erred or made any mistake when it prepared the policy. The court rejected the insurance company's argument, holding that

> [w]hen it is established that, through innocent mistake of an applicant for insurance, the nature of the ownership of the property to be insured … is misdescribed, the error is mutual for purposes of reformation, *even though the insurer is not aware of the error.*

43 A.D.2d at 561 (emphasis added).

A similar holding was reached in *Cheperuk v. Liberty Mut. Fire Ins. Co.,* 263 A.D.2d 748, 693 N.Y.S.2d 304 (3d Dept. 1999). *Cheperuk* involved a homeowner's insurance policy which provided coverage to a properly named mortgagee. Apparently, the original holder of the mortgage had assigned its interest in the property to another entity, but the insurance company was never advised of the assignment, and the policy therefore incorrectly identified the entity holding the mortgage. The house covered by the policy was later destroyed in a fire, and plaintiff sued to obtain payment on behalf of the current mortgage holder. The court held that it was proper to reform the insurance policy to name the mortgagee correctly, *holding,* as in *Court Tobacco,* that an error may be deemed mutual for purposes of reformation "even though the insurer was not

---

**3.** The performance bond states as follows: "Principal [Larjo] has by written agreement dated 11–19–97 entered into a contract with Tishman/Jet for Exterior Restoration and Roof Restoration at P.S. 104." Lacignina Aff. Ex. D.

aware of the error." 263 A.D.2d at 749, 693 N.Y.S.2d 304. *See also Blakeslee v. Royal Ins. Co.*, No. 93–Civ–1633(MBM), 1996 WL 694346, at *3 (S.D.N.Y. Dec. 4, 1996) (holding that "where through unilateral mistake of the insured party the policy misidentifies some detail, such as the identity of the insured or the mortgagee, the mistake is converted to a mutual mistake and the policy may be reformed to reflect the true intention of the insured"); *Crivella v. Transit Cas. Co.*, 116 A.D.2d 1007, 498 N.Y.S.2d 627 (4th Dep't 1986) (allowing reformation where an insurance policy on a nightclub incorrectly identified a subtenant as the club's owner, even though the insurer was unaware of the error, because the insurer intended to insure the building housing the nightclub and its contents).

Despite these holdings, IFIC argues that Princeton's reformation claim is futile because the risk IFIC agreed to cover in the Larjo performance bond as written is different from the risk which would be covered by the performance bond if it were reformed as Princeton seeks; in other words, IFIC contends that the risk that Larjo would fail to perform a subcontract with Tishman/Jet is different from the risk that Larjo would fail to perform a subcontract with Princeton. To make this point, IFIC relies upon the testimony of its underwriter, John Briguglio. Briguglio testified at his deposition that he would have taken additional underwriting steps had he known that Princeton was to be an obligee on the bond. These additional steps would have included reviewing the contract between Princeton and Larjo and focusing in particular upon the contract's payment terms, any liquidated damages provisions, and any hold harmless agreements; investigating Princeton's creditworthiness; and reviewing any payment bonds issued on behalf of Princeton. Briguglio Dep. 52–53, 56–57.[4] IFIC has also submitted a declaration of John Briguglio dated August 5, 2003. Briguglio states in his declaration that

> [a]lthough *I cannot definitively state whether IFIC would or would not have bonded the subcontract between Princeton and Larjo had such a bond been requested* because to do so would require that I speculate on what the results of a contemporaneous due diligence review might have revealed, I can definitively state that I would not have authorized a performance bond on such a subcontract without first being supplied with a copy of the contract and completing appropriate due diligence.

Briguglio Decl. ¶ 6 (emphasis added).

Briguglio's testimony demonstrates only that IFIC's due diligence efforts would have been more extensive had it known that Princeton was to be the obligee on the performance bond. This showing is inadequate to demonstrate that Princeton's reformation claim, if permitted to proceed, would inevitably prove futile. Rather, to defeat Princeton's claim for reformation, IFIC must demonstrate that it would not have issued a performance bond to Larjo had it known that Larjo's subcontract was with Princeton rather than with Tishman/Jet.

In *Court Tobacco*, the trial court ruled against a plaintiff seeking reformation. Reversing, the Appellate Division pointed out that there was no evidence at trial "that defendants would not have issued the policies" if they had known the true name of the insured. 43 A.D.2d at 562, 349

---

4. Relevant excerpts of the transcript of the Briguglio deposition are attached as Exhibit G to the Declaration of Kenneth Hayes in Support of Defendant IFIC's Motion for Summary Judgment.

N.Y.S.2d 8. Relying on *Court Tobacco,* the court in *Blakeslee* granted summary judgment in favor of a plaintiff seeking reformation of a homeowner's insurance policy, and held that a defendant may defeat a reformation claim only with evidence either that the true identity of the party to be named in the policy was concealed by the plaintiff, or that "defendant would not have insured the premises if it was aware of the identity of the true mortgagee." 1996 WL 694346, at *3. Similarly, in *Pena v. N.Y. Prop. Ins. Underwriting Assn.,* 172 A.D.2d 393, 570 N.Y.S.2d 909 (1st Dep't 1991), the court denied a defendant insurer's motion for summary judgment dismissing a reformation claim because it found there was a triable issue of fact regarding "whether knowledge of the facts misrepresented would have led to a refusal by the insurer to issue the policy as to which issue defendant carrier bears the burden of proof." *See also Cheperuk,* 263 A.D.2d at 749, 693 N.Y.S.2d 304 (holding plaintiff was entitled to reformation in part because "defendant [did] not claim that it would have discontinued coverage had it been informed of the change of mortgagee"); *Testa v. Utica Fire Ins. Co.,* 203 A.D.2d 357, 610 N.Y.S.2d 85 (2d Dep't 1994) (holding that "[r]eformation has been allowed in insurance cases where the insured's premises are not as described in the policy but the insurer has not shown that it would not have insured the premises had it known the true facts"); *Abulaynain v. N.Y. Merchant Bankers Mut. Fire Ins. Co.,* 128 A.D.2d 575, 513 N.Y.S.2d 5 (2d Dep't 1987) (same); *Union Station Rest., Inc. v. N. Am. Co.,* 59 A.D.2d 270, 275, 399 N.Y.S.2d 497, 500 (4th Dep't 1977) (same). *Cf. First Financial Ins. Co. v. Allstate Interior Demolition Corp.,* 193 F.3d 109, 119 (2d Cir.1999) (noting that, in a case of alleged misrepresentation by an applicant for insurance, "[t]he burden is on the insurer to establish that it would have rejected the application if it had known the undisclosed information").

IFIC's final argument is that Princeton failed to review the Larjo performance bond when it was issued, and accepted the bond as written without objection. However, this argument fails as well; "[t]he retention of the [bond] without discovery of the error until the happening of the loss is not of itself fatal" to a reformation action. *Court Tobacco,* 43 A.D.2d at 562, 349 N.Y.S.2d 8.

For all these reasons, I conclude Princeton's reformation claim is not futile. Because futility is the sole basis on which IFIC opposes Princeton's motion for leave to file a second amended complaint, I respectfully recommend that this aspect of Princeton's motion be granted.

### D. Remaining Motions

■ Princeton also moves for partial summary judgment dismissing IFIC's fifth and sixth affirmative defenses to Princeton's First Amended Complaint, which assert respectively that Princeton lacks standing to make a claim under the performance bond and that its claim under the bond is barred by the bond's express language providing that only Tishman/Jet and the SCA may sue under it. Both of these affirmative defenses are based upon the bond's failure to identify Princeton as the obligee, and would be defeated if Princeton prevails on its reformation claim. However, Princeton has thus far sought only leave to plead a claim for reformation; it has not sought summary judgment on that claim. Indeed, defendant has not yet been called upon even to answer the reformation claim, much less to adduce evidence raising a question of fact with respect to Princeton's right to relief. Dismissing defendant's affirmative defenses based upon standing and the bond language would be tantamount to granting

Princeton summary judgment on a claim it has not yet even filed. I therefore conclude that Princeton's motion for partial summary judgment dismissing IFIC's fifth and sixth affirmative defenses be denied, without prejudice to its renewal at a later stage in this litigation.

Finally, IFIC's motion for summary judgment is premised upon the fact that Princeton is not a named obligee on the Larjo performance bond. If Princeton is permitted to amend its complaint to add a reformation action, and it prevails on that action, it will become the named obligee on the bond. IFIC's summary judgment motion should, therefore, be denied.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that plaintiff's motion for leave to file a second amended complaint be granted, and that both plaintiff's motion for partial summary judgment dismissing certain affirmative defenses and defendant's motion for summary judgment be denied. Any objections to the recommendations made in this report must be filed with the Clerk of the Court and the Chambers of the Honorable Nina Gershon within ten days of receiving this Report and Recommendation, and in any event, no later than September 22, 2004. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(2); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

September 1, 2004.